SCOTT L. MARSHALL, APPELLANT, V. EDWARD WIMES, DIRECTOR,
STATE OF NEBRASKA, DEPARTMENT OF
MOTOR VEHICLES, APPELLEE.

626 N.W. 2d 229

Filed May 25, 2001.   No. S-00-199.

David W. Jorgensen, of Nye, Hervert, Jorgensen & Watson, P.C., for appellant.

Don Stenberg, Attorney General, and Kyle C. Dahl for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Scott L. Marshall appeals from the district court's affirmance of the order of the director of the Department of Motor Vehicles (DMV) revoking Marshall's operator's license. The issue presented in this appeal is whether the district court erred in affirming the revocation of Marshall's operator's license in light of the DMV's alleged due process violation in refusing to issue a subpoena duces tecum directing the individual who tested Marshall's blood alcohol level to appear at Marshall's revocation hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

The findings of fact set forth by the administrative hearing officer, and adopted by the director of the DMV and the district court, are not at issue in this appeal. Those findings of fact establish that on July 10, 1999, in O'Neill, Nebraska, a vehicle operated by Marshall was stopped for speeding. Observing Marshall's lack of coordination, the investigating officer asked if Marshall had been drinking, and Marshall admitted to consuming four or five drinks. Marshall failed three of the five field sobriety tests that were administered, and Marshall was arrested and taken to Saint Anthony's Hospital, where a sample of his blood was taken for testing. The result of that test, conducted by the Department of Health and Human Services (DHHS), indicated a blood alcohol concentration of .166 grams of alcohol per 100 milliliters of blood. The DMV was notified, and a notice of revocation was issued. Marshall petitioned for an administrative rules of evidence hearing, which was held on August 13.

Based on the evidence adduced at the hearing, the hearing officer recommended revocation of Marshall's motor vehicle

operator's license. On August 25, 1999, the director of the DMV adopted the hearing officer's recommendation and revoked Marshall's license for a period of 1 year. Marshall appealed to the district court, which affirmed the determination of the director. Marshall timely appealed.

Marshall's argument on appeal is based on the proceedings before the DMV prior to Marshall's revocation hearing. Marshall's petition for an administrative hearing was filed on August 2, 1999, and the DMV's notice of hearing was filed on August 3. Marshall immediately filed a praecipe for subpoena duces tecum, directed at the DHHS employee who tested Marshall's blood. The subpoena would have directed the witness to appear at Marshall's hearing and to bring with her a sample of Marshall's blood in her possession as well as records relating to the calibration of the equipment used to test Marshall's blood. Marshall also sought a subpoena to compel the witness to appear for a deposition prior to the hearing.

The praecipe was received by the DMV on August 5, 1999, and was denied on the same day because it did not comply with 247 Neb. Admin. Code, ch. 1, § 009.02 (1998), which provides that "[s]ubpoenas shall be requested in writing at the time of filing the hearing petition. Any request that is not both filed and received by the Director within the time and manner specified shall be denied, unless substantial injustice would result." Marshall's request to depose the witness was also denied on the basis that the applicable administrative regulations did not provide for a subpoena to compel attendance at a deposition. The record reflects that Marshall was aware of the identity of the witness prior to the filing of his petition for hearing, but had not yet been informed of the time or location of the hearing.

Marshall argued before the hearing officer and the district court that the director's application of § 009.02 in the instant case violated Marshall's due process rights.

### ASSIGNMENTS OF ERROR

Marshall assigns, restated, that the district court erred in failing to find that the refusal of the director to issue Marshall's subpoena duces tecum denied Marshall due process of law and was an abuse of discretion.

## STANDARD OF REVIEW

Proceedings for review of a final decision of an administrative agency shall be to the district court, which shall conduct the review without a jury de novo on the record of the agency. *Lackawanna Leather Co. v. Nebraska Dept. of Rev.*, 259 Neb. 100, 608 N.W.2d 177 (2000); *A & D Tech. Supply Co. v. Nebraska Dept. of Revenue*, 259 Neb. 24, 607 N.W.2d 857 (2000). A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *Benitez v. Rasmussen, ante* p. 806, 626 N.W.2d 209 (2001); *Busch v. Omaha Pub. Sch. Dist., ante* p. 484, 623 N.W.2d 672 (2001). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *Benitez v. Rasmussen, supra.*

## ANALYSIS

Marshall argues that he was deprived of due process of law by the director's refusal to issue Marshall's requested subpoena. While Marshall does not specify whether he relies on the state or federal Constitution, this court has observed that the due process requirements of Nebraska's Constitution are similar to those of the federal Constitution. See *Wollenburg v. Conrad*, 246 Neb. 666, 522 N.W.2d 408 (1994).

Nebraska law provides that in a contested case before an administrative agency, opportunity shall be afforded to all parties to the proceeding to present evidence and argument. See Neb. Rev. Stat. § 84-913 (Reissue 1999). To that end, the Legislature has provided that an administrative hearing officer may issue subpoenas and discovery orders. See Neb. Rev. Stat. § 84-914(2) (Reissue 1999). The director of the DMV is responsible for the adoption and promulgation of rules and regulations to govern the conduct of a license revocation hearing and ensure

that the hearing will proceed in an orderly manner. See Neb. Rev. Stat. § 60-6,205(7) (Reissue 1998). The DMV adopted § 009.02 pursuant to this authority. Marshall argues that the director's strict enforcement of this regulation against Marshall deprived him of procedural due process.

Procedural due process limits the ability of the government to deprive people of interests which constitute "liberty" or "property" interests within the meaning of the Due Process Clause and requires that parties deprived of such interests be provided adequate notice and an opportunity to be heard. *Benitez v. Rasmussen, supra; In re Interest of Natasha H. & Sierra H.*, 258 Neb. 131, 602 N.W.2d 439 (1999). The first step in a due process analysis is to identify a property or liberty interest entitled to due process protections. *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 107 S. Ct. 1740, 95 L. Ed. 2d 239 (1987).

It is well established that suspension of issued motor vehicle operators' licenses involves state action that adjudicates important property interests of the licensees. In such cases, the licenses are not to be taken away without that procedural due process required by the 14th Amendment. See, *Dixon v. Love*, 431 U.S. 105, 97 S. Ct. 1723, 52 L. Ed. 2d 172 (1977); *Bell v. Burson*, 402 U.S. 535, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971). See, also, *Illinois v. Batchelder*, 463 U.S. 1112, 103 S. Ct. 3513, 77 L. Ed. 2d 1267 (1983); *Mackey v. Montrym*, 443 U.S. 1, 99 S. Ct. 2612, 61 L. Ed. 2d 321 (1979); *Gausman v. Department of Motor Vehicles*, 246 Neb. 677, 522 N.W.2d 417 (1994).

Once it is determined that due process applies, the question remains what process is due. *Brock v. Roadway Express, Inc., supra.* Though the required procedures may vary according to the interests at stake in a particular context, the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Id.* Thus, before a state may deprive a motorist of his or her driver's license, that state must provide a forum for the determination of the question and a meaningful hearing appropriate to the nature of the case. See, *Bell v. Burson, supra; Wollenburg v. Conrad, supra.* In proceedings before an administrative agency or tribunal, procedural due process requires notice, identification of the accuser, factual basis for the accusation, reasonable time and

opportunity to present evidence concerning the accusation, and a hearing before an impartial board. *Crown Products Co. v. City of Ralston*, 253 Neb. 1, 567 N.W.2d 294 (1997). See, also, *McPherrin v. Conrad*, 248 Neb. 561, 537 N.W.2d 498 (1995) (due process in license revocation proceeding includes reasonable opportunity to present evidence concerning accusation).

The issue presented by Marshall's argument is whether he had the opportunity to present evidence concerning the accusation, given the director's refusal to issue the requested subpoena. Specifically, the question is whether due process was violated by the director's refusal to issue a subpoena where the praecipe was received by the DMV 8 days prior to the revocation hearing and only 3 days after the date required by § 009.02.

In *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), the U.S. Supreme Court set forth a number of factors to be considered in resolving an inquiry into the specific dictates of due process: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. See, also, e.g., *Illinois v. Batchelder, supra*; *Mackey v. Montrym, supra*; *Dixon v. Love, supra* (applying *Mathews* analysis in context of driver's license revocation proceedings).

With respect to the first factor of the *Mathews* analysis, the private interest that is at issue in this case is the interest that was adjudicated at the administrative hearing: Marshall's interest in continued possession of a motor vehicle operator's license. We agree with a vast majority of courts that a driver's interest in his or her driving privileges is significant in today's society, as its loss may entail economic hardship and personal inconvenience. See, e.g., *Lee v. State of R.I.*, 942 F. Supp. 750 (D.R.I. 1996); *Whitesides v. State, Dept. of Public Safety*, 20 P.3d 1130 (Alaska 2001); *Berger v. State Highway Com'r*, 394 N.W.2d 678 (N.D. 1986); *State, Dep't Mtr. Vehicles v. Vezeris*, 102 Nev. 232, 720 P.2d 1208 (1986); *People ex rel. Eppinga v. Edgar*, 112 Ill. 2d

101, 492 N.E.2d 187, 96 Ill. Dec. 945 (1986). See, also, *Coleman v. Watt*, 40 F.3d 255 (8th Cir. 1994).

The next factor we consider is the risk of an erroneous determination and the value, if any, of alternative procedures. Given that Marshall had the burden of establishing that he did not have more than the allowable concentration of alcohol in his blood at the time he was operating a motor vehicle, it is clear that limitations on Marshall's ability to present evidence relevant to that determination heighten the risk of an erroneous deprivation of Marshall's interest in his operator's license. Compare *McPherrin v. Conrad, supra.* It is also clear that permitting the introduction of relevant evidence has value in reducing the risk of error.

This is particularly true where Marshall's license was revoked primarily, if not entirely, in reliance on the written report of the blood test that was performed, yet Marshall was precluded from examining the witness who performed the test in order to determine if the test was reliable. As stated by the Supreme Court of Kansas, "[w]ithout cross-examination, the hearing board has before it an unimpeachable report as evidence against the word of a self-interested licensee. The result is predictable." *Wulfkuhle v. Kansas Dept. of Revenue*, 234 Kan. 241, 247, 671 P.2d 547, 552 (1983). See, also, *Langlois v. Dept. of Employment & Training*, 149 Vt. 498, 546 A.2d 1365 (1988) (availability of subpoenas to protect right to confront witnesses is quid pro quo for allowing important administrative determinations to be made based on written hearsay evidence); *Mohilef v. Janovici*, 51 Cal. App. 4th 267, 58 Cal. Rptr. 2d 721 (1996) (due process may require agency to subpoena witnesses where, absent their testimony, agency's ultimate decision would be based solely on written reports). Compare *Mackler v. Alexis*, 130 Cal. App. 3d 44, 181 Cal. Rptr. 613 (1982) (due process right to cross-examine arresting police officer protected by right to call arresting officer to testify at hearing).

The State argues that in the instant case, there was no reason to believe that the witness' presence would have added anything to the proceeding, "because there was no indication that the blood test was somehow defective or that it was done improperly." Brief

for appellee at 6. However, this argument begs the question. While we cannot condone a "fishing expedition," Marshall was certainly entitled to inquire regarding the chain of custody of his blood sample and whether the procedures used to test that blood complied with DHHS regulations, particularly where the individual who tested the blood was also an employee of a state agency. We also note that the director did not refuse to issue the requested subpoena because the evidence and testimony sought were irrelevant; the sole stated basis for refusal was the timeliness of the praecipe.

The State also argues that adequate procedures existed for Marshall to secure a subpoena but that he failed to avail himself of these procedures. The State argues that since the DMV, and not the motorist, is responsible for the issuance of the subpoena, there is no barrier to the motorist's filing a praecipe for subpoena contemporaneous with the petition for hearing.

The State does not explain, however, precisely how the motorist should overcome the practical difficulties inherent in obtaining a subpoena for a witness to appear at a hearing when the time and place of that hearing has not yet been determined. In the first place, the motorist's request for a hearing must be filed within 10 days of the motorist's receipt of the notice of revocation. See § 60-6,205(6)(a). The State's suggested procedure would require motorists to subpoena any and all needed witnesses prior to the completion of discovery. See 247 Neb. Admin. Code, ch. 1, § 008.02 (1998). In order to obtain a subpoena, the motorist must set forth in the request for subpoena the identity and address of the witness, as well as the facts which the witness is expected to establish. 247 Neb. Admin. Code, ch. 1, § 009.03A through C (1998). The DMV's regulatory scheme also requires that prior to obtaining a subpoena, the motorist must attempt to obtain the voluntary agreement of the witness to appear and must set forth in the subpoena request that the witness refused to appear voluntarily. See, 247 Neb. Admin. Code, ch. 1, § 009.01 (1998); § 009.03D.

In other words, in order to secure the testimony of witnesses with relevant information to offer, the motorist must, within 10 days of the receipt of the notice of revocation and prior to the completion of discovery, (a) identify and locate all potential

witnesses, (b) determine the facts that those witnesses are expected to establish, and (c) secure or be denied the voluntary appearances of those witnesses at a hearing the time and place of which are still unknown. We are not persuaded by the State's argument that the procedures available to Marshall in the established regulatory scheme were adequate to protect Marshall against the erroneous deprivation of his property interest.

The State also contended, at oral argument, that Marshall could have obtained the information he sought from the witness by taking her deposition. This argument, however, is not supported by the record. The record shows that Marshall sought the voluntary appearance of the witness at a deposition and then a subpoena to compel the witness to appear at a deposition, but that the director refused to issue such a subpoena. Marshall has not appealed from the director's refusal to issue a subpoena to compel appearance at the deposition, and we do not comment on the propriety of that refusal.

We now turn to the final, and in this case perhaps most important, factor of the balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976): the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. Significantly, in this case, the State has presented no argument as to the government's specific interest in requiring that requests for subpoenas be filed at the same time as the motorist's petition for hearing.

The State relies on the right of administrative agencies to establish procedures for compelling testimony and to retain the discretion, within legal bounds, for granting or denying requests for the attendance of witnesses. See *Bender v. Department of Motor Vehicles*, 8 Neb. App. 290, 593 N.W.2d 27 (1999). The State's general right to establish procedures for the issuance of subpoenas, however, is not at issue here. Instead, the issue is whether there is a government interest in strictly enforcing a particular regulation, § 009.02, under the circumstances presented in this case.

The State has not identified, and this court cannot discern, a governmental interest that is uniquely served by requiring that a motorist file a request for subpoena at the same time as a petition for hearing. For instance, it is well established that there is

a substantial governmental interest in protecting public health and safety by removing drunken drivers from the highways. See *Mackey v. Montrym*, 443 U.S. 1, 99 S. Ct. 2612, 61 L. Ed. 2d 321 (1979). However, that interest is not advanced by § 009.02. The revocation of a motorist's operator's license for driving under the influence takes effect 30 days after the motorist's receipt of the notice of revocation, regardless of whether the motorist files a petition for hearing. See § 60-6,205(6). A continuance of the hearing stays the expiration of a motorist's temporary license only if the continuance is requested by the director. See *id.* Consequently, a praecipe for subpoena filed after the request for hearing, or even a continuance occasioned by the belated praecipe, would not interfere with the government's interest in removing dangerous motorists from the roads.

The government also has an interest in ensuring that the hearing will proceed in an orderly manner. See § 60-6,205(7). That interest would certainly include a requirement that a praecipe for subpoena be filed sufficiently prior to the hearing. That goal, however, could be achieved by requiring that a praecipe be filed a certain number of days prior to the hearing, see, e.g., § 008.02. Simply put, neither a court nor an administrative agency may subjugate a litigant's due process rights under the guise of judicial economy. See *Zuco v. Tucker*, 9 Neb. App. 155, 609 N.W.2d 59 (2000). We can perceive no significant additional fiscal or administrative burden that would have been placed on the government by the issuance of Marshall's subpoena that would not have been equally present 3 days earlier, when Marshall filed his petition for hearing.

In sum, we conclude that the *Mathews* analysis demonstrates that the application of § 009.02 in this case was in derogation of Marshall's right to procedural due process. Even if Marshall had other opportunities to obtain the information or testimony of the witness, the State has demonstrated no interest in the particular procedures used to disadvantage Marshall, as opposed to other options that would reduce the risk of error in the proceedings with no additional governmental burden. Marshall's interest in the proceeding and the risk of an erroneous determination under the current regulatory scheme if Marshall is unable to present relevant evidence are not outweighed by the government's

minimal interest in requiring that all requests for subpoenas be filed at the same time that a revocation hearing is requested.

The concept of due process embodies the notion of fundamental fairness and defies precise definition. *In re Interest of Kelley D. & Heather D.*, 256 Neb. 465, 590 N.W.2d 392 (1999). Due process is a flexible notion that must be decided on the facts presented in a particular case and calls for such procedural protections as the particular situation demands. See, *id.*; *State v. $1,947*, 255 Neb. 290, 583 N.W.2d 611 (1998). We determine, based on the facts presented in this particular case, that Marshall's procedural due process rights were violated by the director's refusal to issue the subpoena Marshall requested. Consequently, the district court erred as a matter of law in affirming the order of the DMV.

## CONCLUSION

The director's refusal to issue Marshall's requested subpoena constituted a violation of Marshall's right to procedural due process of law. Thus, the district court erred as a matter of law in affirming the order of the DMV. We, therefore, reverse the judgment of the district court and remand the cause to the district court with directions to reverse the director's order of revocation and remand the cause to the DMV for new proceedings consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.