LAYNE L. HASS, APPELLANT, V. BEVERLY NETH, DIRECTOR,
NEBRASKA DEPARTMENT OF MOTOR VEHICLES, APPELLEE.
657 N.W.2d 11

Filed February 21, 2003.   No. S-02-158.

322

Jeffrey H. Bush for appellant.

Don Stenberg, Attorney General, Hobert B. Rupe, and Ingolf D. Maurstad, Senior Certified Law Student, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Layne L. Hass appeals from the judgment of the district court affirming a 1-year driver's license revocation imposed by the Department of Motor Vehicles (the Department). The primary question presented in this appeal is whether the state or federal Constitution required that Hass be allowed, at the administrative license revocation (ALR) hearing, to challenge the lawfulness of the traffic stop that led to his arrest.

## BACKGROUND

Hass was stopped by the Nebraska State Patrol on the afternoon of July 22, 2001, based on erratic driving and speeding.

Rex Kindall, a trooper with the State Patrol, testified that he observed Hass' vehicle swerve onto the shoulder of the county road on which it was westbound. Kindall followed the vehicle and observed it weaving onto the shoulder and clocked the vehicle by radar traveling 59 miles per hour in a 55-mile-per-hour zone. Kindall then turned on his emergency lights and stopped the vehicle.

Kindall testified that it took Hass a little while to respond to Kindall's emergency lights and that when Hass did stop, he had difficulty getting his driver's license out of his wallet. Kindall testified that he could smell an odor of alcohol at the window of the vehicle as he spoke with Hass. Kindall asked Hass to step out of the vehicle and sit in the patrol car. Kindall issued "paperwork" for driving on the shoulder and not having a current proof of insurance and, while speaking with Hass, could clearly smell the odor of alcohol from Hass' breath. Hass was not cited for speeding. Kindall asked Hass if he had been drinking, and Hass stated that he " 'could not lie and had consumed several drinks earlier.' " Kindall administered field sobriety tests; Hass' performance on the tests was erratic.

At that point, Kindall administered a breath test, which Hass failed. Hass was placed under arrest and taken to the jail in Wahoo, Nebraska, where Hass submitted to an Intoxilyzer test. The test indicated .156 grams of alcohol per 210 liters of breath. Kindall completed and issued a "Notice/Sworn Report/Temporary License" (sworn report). Kindall's signature on the sworn report was notarized by the technician who administered the Intoxilyzer test to Hass.

On July 25, 2001, Hass filed a petition for administrative hearing with the Department. A hearing was held on August 2. The hearing officer took "[n]otice" of titles 177 and 247 of the Nebraska Administrative Code, but a copy of title 177 was not entered into the record. Hass did not object at the hearing to the hearing officer's taking notice of title 177. The hearing officer recommended revocation of Hass' driver's license, and the director of the Department ordered Hass' driver's license to be revoked for 1 year. Hass appealed to the district court, which affirmed the action of the Department.

## ASSIGNMENTS OF ERROR

Hass assigns, reordered, that the district court erred in (1) failing to find that the ALR scheme as applied in the case at bar deprives Hass of due process, (2) failing to find that the ALR scheme as applied in the case at bar deprives Hass of equal protection, (3) finding that adequate foundation had been presented before the agency for receipt of evidence concerning the issue of whether Hass was under the influence of an intoxicating liquor because title 177 of the Nebraska Administrative Code was never made a part of the agency's records, and (4) finding that the notary public was not disqualified from administering an oath in this case.

Hass also assigns that the court erred in finding that there was probable cause to believe Hass was under the influence of alcohol to such an extent that he could not prudently operate a motor vehicle. However, this assignment of error is not argued in Hass' brief. A claimed prejudicial error must not only be assigned, but must also be discussed in the brief of the asserting party, and an appellate court will not consider assignments of error which are not discussed in the brief. *Nauenburg v. Lewis, ante* p. 89, 655 N.W.2d 19 (2003).

## STANDARD OF REVIEW

A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. *American Legion v. Nebraska Liquor Control Comm., ante* p. 112, 655 N.W.2d 38 (2003). When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id.*

Whether a statute is constitutional is a question of law; accordingly, the Nebraska Supreme Court is obligated to reach a conclusion independent of the decision reached by the court below. *In re Adoption of Baby Girl H.*, 262 Neb. 775, 635 N.W.2d 256 (2001), *cert. denied sub nom. Armour v. K.D.G.*, 535 U.S.

1035, 122 S. Ct. 1792, 152 L. Ed. 2d 651 (2002). Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *In re Application of Lincoln Electric System, ante* p. 70, 655 N.W.2d 363 (2003).

## ANALYSIS

### DUE PROCESS

■■■ We first turn to Hass' contention that the ALR scheme violates due process. Procedural due process limits the ability of the government to deprive people of interests which constitute "liberty" or "property" interests within the meaning of the Due Process Clause and requires that parties deprived of such interests be provided adequate notice and an opportunity to be heard. *Marshall v. Wimes*, 261 Neb. 846, 626 N.W.2d 229 (2001). We note that the due process requirements of Nebraska's Constitution are similar to those of the federal Constitution. *Id.*

Hass argues that the ALR scheme violates due process because it does not permit him to challenge the Fourth Amendment constitutionality of the traffic stop at the administrative hearing. If a chemical test has disclosed the presence of alcohol in a concentration specified in Neb. Rev. Stat. § 60-6,196 (Cum. Supp. 2000), at the subsequent ALR hearing, the issues to be contested are limited to the following: (1) did the peace officer have probable cause to believe the person was operating or in the actual physical control of a motor vehicle in violation of § 60-6,196 or a city or village ordinance enacted pursuant to such section and (2) was the person operating or in the actual physical control of a motor vehicle while having an alcohol concentration in violation of § 60-6,196(1). See Neb. Rev. Stat. § 60-6,205(6)(c)(ii) (Reissue 1998). See, also, 247 Neb. Admin. Code, ch. 1, § 018 (2001).

However, while other issues such as the illegality of a stop are not contested at the ALR hearing, that does not mean that those issues are never raised. Pursuant to § 60-6,205(3), ALR proceedings are initiated when the driver is arrested pursuant to Neb. Rev. Stat. § 60-6,197 (Cum. Supp. 2000) and a chemical test discloses the presence of alcohol in a concentration specified in § 60-6,196.

A person whose operator's license is subject to revocation pursuant to subsection (3) of section 60-6,205 shall have all proceedings dismissed or his or her operator's license immediately reinstated without payment of the reinstatement fee upon receipt of suitable evidence by the director that (a) within the thirty-day period following the date of arrest the prosecuting attorney responsible for the matter declined to file a complaint alleging a violation of section 60-6,196, (b) the charge was dismissed, or (c) the defendant, at trial, was found not guilty of violating such section.

Neb. Rev. Stat. § 60-6,206(4) (Reissue 1998). Consequently, any Fourth Amendment issue presented by the initial arrest may be raised in a subsequent criminal proceeding for driving under the influence (DUI). If there is no criminal prosecution, the criminal charge is dismissed or the defendant is acquitted, then either the ALR proceeding is dismissed or the driver's license is reinstated.

We note that Hass' argument implies that if the scope of the ALR hearing permitted the issue to be considered, the Fourth Amendment exclusionary rule would apply in an ALR proceeding. The majority of jurisdictions considering the issue have concluded that the rule barring admission in criminal trials of evidence derived from an unlawful stop, arrest, search, or seizure does not generally apply in license suspension proceedings. See, generally, Annot., 23 A.L.R.5th 108 (1994). The Fourth Amendment issue is not the same in Nebraska, however, by virtue of the statutory framework set forth above. Administrative revocation is contingent upon a successful prosecution of the driver in a criminal DUI proceeding. If the exclusionary rule, available in the criminal proceeding, prevents a conviction, then the exclusionary rule has also indirectly determined the outcome of the ALR proceeding. Compare *Brownsberger v. Dept. of Transp., MVD*, 460 N.W.2d 449 (Iowa 1990). Cf. *Young v. Neth*, 263 Neb. 20, 24, 637 N.W.2d 884, 888 (2002) (ALR must be based on "valid arrest"). The issue presented here is not based on the 4th Amendment; rather, the issue presented is whether 14th Amendment due process is violated by excluding 4th Amendment issues from the ALR proceeding and reserving those issues for the criminal DUI proceeding.

■ The first step in a due process analysis is to identify a property or liberty interest entitled to due process protections. *Marshall v. Wimes*, 261 Neb. 846, 626 N.W.2d 229 (2001), citing *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 107 S. Ct. 1740, 95 L. Ed. 2d 239 (1987). Suspension of issued motor vehicle operators' licenses involves state action that adjudicates important property interests of the licensees. In such cases, the licenses are not to be taken away without that procedural due process required by the 14th Amendment. *Marshall, supra*, citing *Dixon v. Love*, 431 U.S. 105, 97 S. Ct. 1723, 52 L. Ed. 2d 172 (1977), and *Bell v. Burson*, 402 U.S. 535, 91 S. Ct. 1586, 29 L. Ed. 2d 90 (1971).

■ Once it is determined that due process applies, the question remains what process is due. *Marshall, supra*, citing *Brock, supra*. Though the required procedures may vary according to the interests at stake in a particular context, the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Id.* Thus, before a state may deprive a motorist of his or her driver's license, that state must provide a forum for the determination of the question and a meaningful hearing appropriate to the nature of the case. *Marshall, supra*. In proceedings before an administrative agency or tribunal, procedural due process requires notice, identification of the accuser, factual basis for the accusation, reasonable time and opportunity to present evidence concerning the accusation, and a hearing before an impartial board. *Id.*

■ In *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), the U.S. Supreme Court set forth a number of factors to be considered in resolving an inquiry into the specific dictates of due process: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Marshall, supra*.

■ The private interest that is at issue in this proceeding is the driver's interest in continued possession of a motor vehicle operator's license. We have previously held, in a *Mathews* analysis,

that a driver's interest in his or her driving privileges is significant in today's society, as its loss may entail economic hardship and personal inconvenience. See *Marshall, supra.*

The second prong of the *Mathews* analysis is the risk of an erroneous determination and the value, if any, of alternative procedures. In the present context, this would refer to the risk of the revocation of a driver's license despite the existence of a potentially valid Fourth Amendment challenge to the driver's arrest. Ultimately, the risk of erroneous deprivation is minimized by the fact that any legitimately dispositive Fourth Amendment argument will ultimately be validated in the criminal proceeding and result in the dismissal of the ALR proceeding or reinstatement of the driver's license. The value, if any, of determining a Fourth Amendment challenge at an ALR proceeding is limited to avoiding the temporary deprivation of the driver's license for the time period between a final judgment regarding the administrative revocation and the conclusion of the criminal DUI proceeding. See Neb. Rev. Stat. § 60-6,208 (Reissue 1998).

The final factor of the balancing test set out in *Mathews* is the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. There is no doubt of the substantial governmental interest in protecting public health and safety by removing drunken drivers from the highways. *Marshall v. Wimes*, 261 Neb. 846, 626 N.W.2d 229 (2001). See, also, *Mackey v. Montrym*, 443 U.S. 1, 17, 99 S. Ct. 2612, 61 L. Ed. 2d 321 (1979) (states afforded "great leeway in adopting summary procedures to protect public health and safety" by removing drunken drivers from highways); *Dixon v. Love*, 431 U.S. 105, 114, 97 S. Ct. 1723, 52 L. Ed. 2d 172 (1977) (discussing "important public interest in safety on the roads and highways, and in the prompt removal of a safety hazard").

This court has previously discussed the "sound policy reasons for leaving a degree of separation between the civil ALR hearing and criminal DUI prosecutions." *State v. Young*, 249 Neb. 539, 544, 544 N.W.2d 808, 812 (1996).

Were this court to force the State to litigate thoroughly every element of DUI at an ALR hearing, such a holding

would seriously undermine the Legislature's goal of providing an informal and prompt review of the decision to suspend a driver's license. . . . ALR hearings would quickly evolve into full-blown trials at which the State must fully litigate every possible issue regarding a motorist's actions, thereby losing their effectiveness in removing potentially dangerous drivers from the Nebraska highways within 1 month of their offense.

(Citation omitted.) *Id.* at 544, 544 N.W.2d at 812-13.

The burden of establishing the unconstitutionality of a statute is on the one attacking its validity. *State ex rel. Stenberg v. Omaha Expo. & Racing,* 263 Neb. 991, 644 N.W.2d 563 (2002). A statute is presumed to be constitutional, and all reasonable doubts will be resolved in favor of its constitutionality. *Andrews v. Schram,* 252 Neb. 298, 562 N.W.2d 50 (1997). The unconstitutionality of a statute must be clearly demonstrated before a court can declare the statute unconstitutional. *Ponderosa Ridge LLC v. Banner County,* 250 Neb. 944, 554 N.W.2d 151 (1996). We conclude that Hass has not shown due process is violated because he is precluded from raising Fourth Amendment issues in an ALR proceeding.

Because persons who drive while under the influence of alcohol present a hazard to the health and safety of all persons using the highways, a procedure is needed for the swift and certain revocation of the operator's license of any person who has shown himself or herself to be a health and safety hazard . . . .

§ 60-6,205(1). This stated purpose is advanced by the provisions of § 60-6,205(6)(c), which limit the issues at an ALR hearing to (1) whether the arresting officer had probable cause to believe the person was operating or in the actual physical control of a motor vehicle while under the influence of drugs or alcohol and (2) whether the driver actually was operating or in the actual physical control of a motor vehicle while under the influence of drugs or alcohol—in other words, the issues most pertinent to determining whether or not a driver actually represents a hazard to the health and safety of those using the highways.

We conclude that the State's interest in quickly and efficiently removing drunken drivers from the highways provides sufficient

justification for deferring consideration of Fourth Amendment issues to a criminal DUI proceeding. The State's interest in public safety outweighs the temporary inconvenience of the driver who is deprived of his or her driving privileges during the time period between receipt of a final order from an ALR hearing and the resolution of a subsequent criminal DUI prosecution. The ALR hearing is sufficiently meaningful, pursuant to the balancing test of *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), to satisfy the requirements of constitutional due process. Hass' first assignment of error is without merit.

### EQUAL PROTECTION

Hass next argues that the ALR scheme violates constitutional equal protection, in that one group (i.e., drivers subject to ALR proceedings) is treated differently (i.e., not permitted to raise Fourth Amendment issues) from a similarly situated group (i.e., drivers subject to criminal DUI prosecutions). For purposes of this analysis, we do not consider the equal protection requirements of the Nebraska Constitution to be any more demanding than the Equal Protection Clause of the U.S. Constitution. See *Mach v. County of Douglas*, 259 Neb. 787, 612 N.W.2d 237 (2000).

Where a statute is challenged under the Equal Protection Clause, the general rule is that legislation is presumed to be valid. *Gas 'N Shop v. City of Kearney*, 248 Neb. 747, 539 N.W.2d 423 (1995). The burden of establishing the unconstitutionality of a statute is on the one attacking the statute's validity. *Bergan Mercy Health Sys. v. Haven*, 260 Neb. 846, 620 N.W.2d 339 (2000). In an equal protection challenge, when a fundamental right or suspect classification is not involved in legislation, the legislative act is a valid exercise of police power if the act is rationally related to a legitimate governmental purpose. See *State ex rel. Dept. of Health v. Jeffrey*, 247 Neb. 100, 525 N.W.2d 193 (1994). Hass concedes that no fundamental right or suspect classification is implicated by this case.

The initial inquiry in an equal protection analysis focuses on whether the challenger is similarly situated to another group for the purpose of the challenged governmental action. Absent this threshold showing, one lacks a viable equal protection claim.

*Benitez v. Rasmussen*, 261 Neb. 806, 626 N.W.2d 209 (2001). Hass' argument fails to pass this initial inquiry, because, given the relationship between the ALR proceedings and criminal DUI prosecutions, there is no meaningful delineation between the "groups" identified by Hass. Any person whose license is revoked following a chemical test disclosing the presence of unlawful amounts of alcohol (a member of Hass' first "group") will, necessarily, also be the defendant in a criminal DUI prosecution (a member of Hass' second "group"). If criminal prosecution is not brought or is unsuccessful, then the ALR proceeding is dismissed or the driver's license is reinstated. Since no driver's license can be revoked in an ALR proceeding without that driver also facing a criminal DUI prosecution, there is no meaningful delineation between the two "groups" that Hass contends are separate.

██ This conclusion is dispositive of Hass' equal protection claim. For the sake of completeness, however, we note that were we to proceed to judicial scrutiny of the challenged legislation, Hass' argument would again fail. The rational relationship standard, as the most relaxed and tolerant form of judicial scrutiny under the Equal Protection Clause of the 14th Amendment to the U.S. Constitution, is offended only if a classification rests on grounds which are wholly irrelevant to the achievement of the government's objectives. *Bauers v. City of Lincoln*, 255 Neb. 572, 586 N.W.2d 452 (1998). As previously noted in our due process analysis, the reservation of Fourth Amendment issues for a criminal DUI prosecution is rationally related to the State's objective of promoting public safety. Because there are no separate classifications at issue in this case, and because the State's policy is reasonable in any event, we conclude that Hass' second assignment of error is without merit.

## NOTICE OF TITLE 177

Hass' next assignment of error relates to the hearing officer's taking notice of title 177 of the Nebraska Administrative Code, without the admission into evidence of title 177. The hearing officer took notice of both title 247, which contains rules and regulations of the Department of Motor Vehicles, and title 177, which contains regulations of the Department of Health. The essence of Hass' argument is that the Department of Motor Vehicles may

take notice of its own rules and regulations, but not the rules or regulations of other administrative agencies. Compare Neb. Rev. Stat. § 84-914(5) (Reissue 1999). The district court concluded that this was error, but after a de novo review of the record without considering title 177, the record was still sufficient to sustain the decision of the Department.

We do not consider Hass' assignment of error, because the record reveals no indication that Hass objected at the ALR hearing to the hearing officer's taking notice of title 177. Generally, in an appeal under the Administrative Procedure Act, an appellate court will not consider an issue on appeal that was not presented to or passed upon by the administrative agency. See *Metropolitan Utilities Dist. v. Twin Platte NRD*, 250 Neb. 442, 550 N.W.2d 907 (1996). A litigant's failure to make a timely objection waives the right to assert prejudicial error on appeal. *Davis v. Wimes*, 263 Neb. 504, 641 N.W.2d 37 (2002). One cannot silently tolerate error, gamble on a favorable result, and then complain that one guessed wrong. *Maxwell v. Montey*, 262 Neb. 160, 631 N.W.2d 455 (2001).

In this case, Hass was silent when the hearing officer took notice of title 177. Hass did not preserve any error in that ruling for appellate review. Thus, we reject Hass' assignment of error, albeit for reasons other than those relied upon by the court. See *Egan v. Stoler, ante* p. 1, 653 N.W.2d 855 (2002).

## NOTARY PUBLIC

Hass' fourth and final assignment of error is based on the fact that the arresting officer's signature on the sworn report was notarized by the technician who administered the Intoxilyzer test. Hass argues that the notary public was an interested party, disqualified from acting in a case where he was interested.

Whether a notary is disqualified, by virtue of a relationship or interest, is a factual question to be determined from the circumstances of each particular case. See, *Banking House of A. Castetter v. Stewart*, 70 Neb. 815, 98 N.W. 34 (1904); *Horbach v. Tyrrell*, 48 Neb. 514, 67 N.W. 485 (1896). The general rule is that a notary has a disqualifying interest in a proceeding if the notary has a financial or beneficial interest in the transaction other than receipt of the ordinary notarial fee, or is

named, individually, as a party to the transaction. See *Galloway v. Cinello*, 188 W. Va. 266, 423 S.E.2d 875 (1992) (citing cases). See, generally, Raymond C. Rothman, Notary Public Practices & Glossary (1978).

The sworn report at issue in this case is, by definition, an affidavit. An affidavit is a written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation. *State v. Haase*, 247 Neb. 817, 530 N.W.2d 617 (1995). An affidavit must bear on its face, by the certificate of the officer before whom it is taken, evidence that it was duly sworn to by the party making the same. *Kennedy & Parsons Co. v. Schmidt*, 152 Neb. 637, 42 N.W.2d 191 (1950). An affidavit does not, however, require the notary to confirm the truth of the facts stated in the affidavit; rather, the certificate, also known as a jurat, confirms only that the affiant appeared before the notary, attested to the truth of his or her statements, and signed the affidavit. See Rothman, *supra.*

In this case, Hass has not identified any pecuniary or other beneficial interest that the notary would have in Hass' ALR proceeding. Hass argues only that the notary, having administered the Intoxilyzer test, was a witness to the State's case against Hass. This does not indicate, however, that the notary was impaired by a conflict of interest that would have precluded him from certifying the sworn report of the arresting officer, as the notary still had no personal interest in the outcome of the proceedings against Hass. The notary's function, with respect to the sworn report, was simply to certify that the arresting officer appeared before the notary, affirmed the truth of the statements made in the sworn report, and signed the affidavit. The notary's other function, as the technician who administered the Intoxilyzer test, did not disqualify him from performing his notarial function with respect to the sworn report. In short, there is substantial evidence to support the district court's conclusion that the notary was not disqualified from certifying the sworn report.

Moreover, Hass has not indicated how he might have been prejudiced by such a conflict of interest, had it existed. Hass does not claim that the notary failed to perform his duties properly. Where there is no imputation or charge of improper conduct or

bad faith or undue advantage, the mere fact that an oath was taken before an interested party will not vitiate the ceremony or render it void, if otherwise it is free from objection or criticism. *Galloway, supra.* Hass does not offer any objection to or criticism of the sworn report aside from the observation that the same person administered the Intoxilyzer test and notarized the arresting officer's signature. Absent any indication of actual prejudice to Hass, there is no basis on which to void the sworn report.

The certification of a notary public's official duties, over his or her signature and official seal, is received by the courts as presumptive evidence of the facts certified therein. See Neb. Rev. Stat. § 64-107 (Reissue 1996). Hass offers no challenge to this presumption. In fact, the record shows the contrary, as the arresting officer testified at the ALR hearing to the substance of the facts set forth in the sworn report. Hass has not shown that the notary public was an interested party to this proceeding or how any purported conflict of interest may have worked to Hass' prejudice. Therefore, Hass' final assignment of error is without merit.

## CONCLUSION

Hass' constitutional challenges to the ALR scheme are without merit, as are Hass' remaining assignments of error. Therefore, the judgment of the district court is affirmed.

AFFIRMED.