744 N.W.2d 465 (2008)
16 Neb. App. 348
Mark A. STOETZEL, Appellee
v.
Beverly NETH, director, Department of Motor Vehicles of the State of Nebraska, Appellant.
No. A-06-678.
Court of Appeals of Nebraska.
January 29, 2008.
*467 Jon Bruning, Attorney General, Laura L. Neesen, and Kevin J. Edwards, for appellant.
Greg C. Harris, Kearney, for appellee.
IRWIN, SIEVERS, and MOORE, Judges.
IRWIN, Judge.

I. INTRODUCTION
The director of the Nebraska Department of Motor Vehicles (the Department) appeals the judgment of the district court which reversed an order of the Department revoking Mark A. Stoetzel's driver's license. After our review of the record, we find that a properly completed sworn report was not timely received by the Department and that, as a result, the Department did not have jurisdiction to revoke Stoetzel's driver's license. We affirm the decision of the district court.

II. BACKGROUND
We limit our recitation of facts to those relevant to the narrow issue presented. On February 18, 2006, an officer with the Buffalo County sheriff's office arrested Stoetzel for driving under the influence of alcohol. Upon Stoetzel's arrest, Sgt. Wyatt Hoagland transported him to a hospital, where Stoetzel submitted to a blood test. The blood test was then sent to a laboratory to determine Stoetzel's blood alcohol content.
On March 2, 2006, Sergeant Hoagland received the results of the blood test. The test results indicated that Stoetzel had a blood alcohol content of .19 of a gram of alcohol per 100 milliliters of blood. After receiving the test results, the sergeant completed the "Notice/Sworn Report/Temporary License" form (sworn report) and forwarded it to the Department.
On March 6, 2006, the Department received the sworn report. However, the sworn report did not indicate the date that Sergeant Hoagland had received the blood test results. The Department returned the report to the sergeant, requesting that he provide the omitted information.
On March 7, 2006, the Department sent Stoetzel a "Notice of Administrative License Revocation Temporary License." In response to this notice, Stoetzel timely requested an administrative hearing.
On March 17, 2006, the Department received an amended sworn report from Sergeant Hoagland. The amended report was the same sworn report the Department received on March 6, but it had been altered to include the date the sergeant received the blood test results ("3-2-06").
On March 31, 2006, an administrative license revocation (ALR) hearing was held. At the hearing, Stoetzel objected to the admissibility of the sworn report. Stoetzel argued that pursuant to Neb.Rev.Stat. § 60-498.01(5)(a) (Reissue 2004), the sworn report was not timely received by the Department, because a properly completed sworn report was not received until March 17, which was more than 10 days after the sergeant had received the results of the blood test. The hearing officer overruled this objection and allowed the sworn report into evidence.
After the conclusion of the ALR hearing, the director of the Department revoked Stoetzel's operator's license and privilege to operate a motor vehicle in the State of Nebraska for a period of 1 year. Stoetzel challenged the revocation in the district court.
*468 On May 17, 2006, a hearing was held in district court. At the hearing, Stoetzel again argued, inter alia, that the Department did not receive a timely submitted sworn report. Stoetzel further argued that as a result of the Department's failure to receive a timely submitted sworn report, it lacked jurisdiction to revoke Stoetzel's driver's license. The district court found that a properly completed sworn report was not received by the Department until more than 10 days after the sergeant received the blood test results and that the Department lacked jurisdiction to revoke Stoetzel's driver's license. As such, the court reversed the Department's revocation of Stoetzel's driver's license.
The Department timely appeals.

III. ASSIGNMENTS OF ERROR
On appeal, the Department alleges that the district court erred in determining that a properly completed sworn report was not timely submitted to the Department and in concluding that as a result of the untimely submission of the sworn report, the Department lacked jurisdiction to revoke Stoetzel's driver's license.

IV. ANALYSIS

1. STANDARD OF REVIEW
A judgment or final order rendered by a district court in a judicial review pursuant to the Administrative Procedure Act may be reversed, vacated, or modified by an appellate court for errors appearing on the record. Robbins v. Neth, 273 Neb. 115, 728 N.W.2d 109 (2007). When reviewing an order of the district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. Id. Whether a decision conforms to the law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. Id.
Interpretation of statutes presents a question of law, and an appellate court is obligated to reach an independent conclusion, irrespective of the decision made by the court below, with deference to an agency's interpretation of its own regulations, unless plainly erroneous or inconsistent. Morrissey v. Department of Motor Vehicles, 264 Neb. 456, 647 N.W.2d 644 (2002), disapproved on other grounds, Hahn v. Neth, 270 Neb. 164, 699 N.W.2d 32 (2005); Scott v. State, 13 Neb.App. 867, 703 N.W.2d 266 (2005).

2. UNTIMELY SUBMISSION OF SWORN REPORT
The Department first asserts that the district court erred in determining that a properly completed sworn report was not timely submitted to the Department. The Department alleges that it received a properly completed sworn report within 10 days after Sergeant Hoagland, as the arresting officer, obtained the results of the blood test, pursuant to § 60-498.01(5)(a). We disagree.
While the Department did receive a sworn report within 10 days after the arresting officer obtained the blood test results, the officer omitted from this report the date that he obtained the blood test results. We hold that § 60-498.01(5)(a) requires that a sworn report include the date the officer received the blood test results. We hold this because without this information as a requirement of the sworn report, there is no way for the Department to determine, in any given case, whether the officer in fact submitted the sworn report within 10 days after obtaining the blood test results. Therefore, we find that the initial sworn report was not properly *469 completed and was not sufficient to confer authority on the Department to begin license revocation proceedings.
The Department did not receive an amended report which included the date the arresting officer obtained the blood test results until 15 days after the officer had obtained the blood test results. Section 60-498.01(5)(a) requires that the arresting officer submit the sworn report to the Department within 10 days after obtaining the blood test results. As a result, the amended report was untimely, since it was not received by the Department within 10 days of the date the officer received the blood test results.
Furthermore, as we will discuss more fully in the following section of the analysis, the amended report did not constitute a "sworn report" as required by § 60-498.01(5)(a), because the change to the report was not properly notarized.

(a) March 6, 2006, Sworn Report
In an ALR proceeding, if the Department can establish that the arresting officer provided a sworn report containing the recitations required by the applicable statute, it has made a prima facie case for license revocation, and the director is not required to prove that the recitations contained in the sworn report are true. See Hahn v. Neth, supra. Because of the significant weight given to the sworn report in an ALR proceeding, it is essential that the report is properly completed. See id.
In Hahn v. Neth, 270 Neb. 164, 699 N.W.2d 32 (2005), the Nebraska Supreme Court examined the issue of whether an incomplete sworn report was sufficient to confer authority on the director of the Department to revoke a motorist's operator's license. The court concluded that the test to determine whether an omission on a sworn report is a jurisdictional defect rather than a technical one "should be whether, notwithstanding the omission, the sworn report conveys the information required by the applicable statute." Id. at 171, 699 N.W.2d at 38.
In the instant case, the record reveals that Stoetzel was arrested for driving under the influence on February 18, 2006. Subsequent to his arrest, he submitted to a blood test. This blood test was sent to a laboratory for analysis, and the results of the test were therefore not immediately available.
The arresting officer received the results of Stoetzel's blood test on March 2, 2006. The officer submitted a report to the Department on March 6, approximately 4 days after he received the blood test results. However, the officer neglected to complete the portion of the form which asked when he received the results of the blood test from the laboratory.
Section 60-498.01(5)(a) provides the procedural steps for revoking a person's license when, like Stoetzel, the person submitted to a blood test, but the results of that blood test were not available while the person was still in custody. Section 60-498.01(5)(a) states:
If the results of a chemical test indicate the presence of alcohol in a concentration specified in section 60-6,196, the results are not available to the arresting peace officer while the arrested person is in custody, and the notice of revocation has not been served as required by subsection (4) of this section, the peace officer shall forward to the director a sworn report containing the information prescribed by subsection (3) of this section within ten days after receipt of the results of the chemical test. If the sworn report is not received within ten days, the revocation shall not take effect.
*470 Pursuant to the Nebraska Supreme Court's decision in Hahn, we must determine whether the original report submitted to the Department on March 6, 2006, conveyed the information required by § 60-498.01(5)(a) in order to decide whether, or not the Department received a properly completed and timely submitted sworn report. If the March 6 sworn report lacked information mandated by statute, it could not confer authority on the Department to revoke Stoetzel's driver's license.
The Department argues that the March 6, 2006, report was properly completed and timely filed. In making its argument, the Department cites to the language of § 60-498.01(5)(a) which requires the arresting officer to complete a sworn report containing the information prescribed by § 60-498.01(3). Section 60-498.01(3) requires the following information to be in a sworn report: (a) that a person was arrested as described in subsection (2) of Neb.Rev. Stat. § 60-6,197 (Reissue 2004) and the reasons for such arrest, (b) that the person was requested to submit to the required test, (c) that the person submitted to the test, and (d) the type of test to which he or she submitted and the results of the test.
The Department contends that the arresting officer supplied all of the necessary information required by § 60-498.01(3) and that, as such, the original report was sufficient to confer authority to revoke Stoetzel's driver's license. The Department further asserts that the date the arresting officer received the blood test results is not statutorily required by the language of either § 60-498.01(3) or (5)(a). We disagree.
While the statutory language of § 60-498.01(5)(a) does not explicitly require on the sworn report the inclusion of the date the arresting officer received the blood test results, the language does state that revocation proceedings shall not take effect if the report is received more than 10 days after the officer receives the test results. Implicit in the statutory language, then, is that the Department must know when the officer received the test results in order to know if it has authority to begin license revocation proceedings. Because the officer omitted this information from the March 6, 2006, report, the Department did not know, and could not have known, whether or not it had the authority to institute revocation proceedings. As a result, the March 6 sworn report did not convey all of the statutorily required information and did not confer authority on the Department to revoke Stoetzel's driver's license.
We also note that the Department provides the sworn report to arresting officers and that such form is designed to facilitate the accurate completion of the sworn report. The sworn report filled out by the arresting officer in this case provided space for the officer to indicate the date he received Stoetzel's blood test results. A box, located next to the space asking for the blood test results, contains the preprinted phrase "Date Blood Test Results Received:" and space for the officer to fill in the relevant date. The arresting officer left this box blank when he first submitted the report to the Department on March 6, 2006.
We digress for a moment to point out that the district court based its reversal of the Department's decision to revoke Stoetzel's driver's license on its finding that the arresting officer incorrectly completed the March 6, 2006, report when he stated that Stoetzel failed a breath test rather than a blood test. The district court found that this was not a "technical error" and that, as a result, the March 6 report was not properly completed.
*471 However, the record indicates that the arresting officer made this change prior to the first submission of the report on March 6, 2006. Both the March 6 report and the March 17 report reveal that the officer initially marked a box to indicate that Stoetzel failed a breath test. The officer then crossed out this marking, initialed next to the change, and marked a box to indicate that Stoetzel had, in fact, failed a blood test. Because this change was present on the March 6 report, it did not affect a determination of whether or not the March 6 report was properly completed. However, based on our discussion above, the district court reached the correct result, albeit for the wrong reason, when it found that the March 6 sworn report was not properly completed and, thus, was not timely filed. A proper result will not be reversed merely because it was reached for the wrong reason. In re Trust Created by Cease, 267 Neb. 753, 677 N.W.2d 495 (2004).
We find that the March 6, 2006, report was not properly completed and was not sufficient to confer authority on the Department to revoke Stoetzel's driver's license, because the arresting officer omitted the date he obtained the blood test results from the report. Section 60-498.01(5)(a) requires that a properly completed sworn report include the date the arresting officer obtained the results of the blood test so that the. Department knows whether or not it received the report within 10 days after the officer obtained the results of the blood test.

(b) March 17, 2006, Sworn Report
After receiving the original, incomplete report, the Department returned the report to the arresting officer, asking the officer to include the date that he received the blood test results. The officer amended the report by adding the date the blood test results were received, but did not submit the second report to the Department until March 17, 2006, 15 days after the officer received the blood test results on March 2. Because § 60-498.01(5)(a) requires the arresting officer to submit a report "within ten days after receipt of the results of the chemical test," we find the amended report to be untimely.
In addition to finding that the arresting officer did not timely submit the amended report to the Department, we note that it appears this amended report is not "sworn," as is required by § 60-498.01(5)(a). A sworn report in an ALR proceeding is, by definition, an affidavit. Valeriano-Cruz v. Neth, 14 Neb.App. 855, 716 N.W.2d 765 (2006). See, also, Hass v. Neth, 265 Neb. 321, 657 N.W.2d 11 (2003). An affidavit is a written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation. Id. An affidavit must bear on its face, by the certificate of the officer before whom it is taken, evidence that it was duly sworn to by the party making the same. Id.
Neb.Rev.Stat. § 64-107 (Reissue 2003) empowers a notary public to administer oaths and affirmations in all cases and contemplates proof of those acts as follows: "Over his signature and official seal, he shall certify the performance of such duties so exercised and performed under the provisions of this section, which certificate shall be received in all courts of this state as presumptive evidence of the facts therein certified to."
The March 17, 2006, report revealed on its face that a notary had certified that the arresting officer swore to the veracity of the contents of the report when it was first completed on March 6. However, the amended report contained additional information. The arresting officer altered the *472 March 6 report so that it included the date he received the blood test results. As such, the amended report should have been notarized again, to indicate on its face that the arresting officer swore to the veracity of all the information contained in the updated report, including the date the officer received the blood test results.
However, while the amended report did contain the official seal of a notary, it did not contain the signature of the notary. After the arresting officer added to the report the date he received the blood test results, he signed his initials next to this information. A notary then affixed her seal above the newly added information and wrote the date above the seal. The notary did not sign the form. Section 64-107 mandates that a properly notarized document contain both the notary's signature and seal. Without both the signature and the seal, the report cannot be considered sworn, as is required by § 60-498.01(5)(a).
We conclude that the Department did not receive a properly completed and timely submitted sworn report. The March 6, 2006, report did not contain the date the arresting officer received the blood test results. Section 60-498.01(5)(a) mandates the inclusion of this information, and as a result, we find that the Department was without authority to institute revocation proceedings upon receiving the March 6 report. In addition, the March 17 report was not timely submitted and was not sworn. We find there is no merit to this assignment of error.

3. JURISDICTION
The Department next asserts that the omission from the original sworn report of the date the arresting officer received the blood test results was merely a "technical defect" and that "its absence did not impede the conferral of jurisdiction on the Department." Brief for appellant at 9. We find that the language in § 60-498.01(5)(a) mandates that the sworn report be submitted to the Department within 10 days after the arresting officer receives the chemical test results, because a person arrested pursuant to this section does not receive prior notice of the possibility of revocation proceedings. If the sworn report is submitted after the 10-day period, the Department lacks jurisdiction to revoke a person's driver's license. We affirm the decision of the district court which found that the Department lacked jurisdiction to revoke Stoetzel's driver's license, because the Department did not receive a properly completed and timely submitted sworn report.
Section 60-498.01 provides the procedures for administratively revoking a person's driver's license. Specifically, § 60-498.01(2) provides the procedures for revoking a person's driver's license when the person refuses to submit to a chemical test of blood, breath, or urine; § 60-498.01(3) provides the procedures for revoking a person's driver's license when the person submits to a chemical test of blood or breath, the test discloses the presence of alcohol, and the test results are available to the arresting officer while the person is still in custody; and, as discussed above, § 60-498.01(5)(a) provides the procedures for revoking a person's driver's license when the results of a chemical test indicate the presence of alcohol and the results are not available while the person is still in custody.
Section 60-498.01(5)(a) provides:
If the results of a chemical test indicate the presence of alcohol in a concentration specified in section 60-6,196, the results are not available to the arresting peace officer while the arrested person is in custody, and the notice of revocation has not been served as required by subsection (4) of this section, *473 the peace officer shall forward to the director a sworn report containing the information prescribed by subsection (3) of this section within ten days after receipt of the results of the chemical test. If the sworn report is not received within ten days, the revocation shall not take effect.

(Emphasis supplied.) Under § 60-498.01(5)(a), the arrested person does not receive immediate notice of license revocation proceedings, because the results of the chemical test are not readily available. In these situations, the arrested person does not receive notice of the revocation until after the Department has received a sworn report from the arresting officer. Section 60-498.01(5)(b) requires the Department to serve notice of revocation on a person by certified or registered mail only after it has received a sworn report. It seems logical that because of this delay in notification, the Legislature included the last sentence of § 60-498.01(5)(a), which specifically precludes the Department from taking action if the sworn report is submitted after the 10-day period.
While § 60-498.01(2) and (3) also contain language instructing an arresting officer to submit a sworn report within 10 days, these sections provide for immediate notification of pending license revocation proceedings to an arrested person. Section 60-498.01(2) and (3) state that the arresting peace officer, as agent for the director, "shall verbally serve notice to the arrested person of the intention to immediately confiscate and revoke the operator's license of such person." In addition, § 60-498.07.(2) and (3) do not contain language like that found in the last sentence of § 60-498.01(5)(a), which explicitly precludes the Department from beginning revocation proceedings if the sworn report is not submitted within 10 days.
For the sake of a thorough discussion, we know this court recently held that the 10-day time limitation set out in § 60-498.01(2) and (3) is directory and not mandatory and that the failure to strictly abide by the 10-day time limit does not invalidate license revocation proceedings or take away the jurisdiction of the Department. See, Thomsen v. Nebraska Dept. of Motor Vehicles, 16 Neb.App. 44, 741 N.W.2d 682 (2007); Forgey v. Nebraska Dept. of Motor Vehicles, 15 Neb.App. 191, 724 N.W.2d 828 (2006).
In Forgey, we held that the language in § 60-498.01(2), which states that "[t]he arresting peace officer shall within ten days forward to the director a sworn report," was directory and not mandatory, because "there is no sanction attached to an officer's failure to file the sworn report with the Department within 10 days." 15 Neb. App. at 197, 724 N.W.2d at 833.
In Thomsen, we further explained our decision to make the time limitation in § 60-498.01(2) and (3) directory. In doing so, we specifically distinguished § 60-498.01(2) and (3) from § 60-498.01(5)(a):
[U]nder § 60-498.01(5)(a), motorists do not receive notice at the time of arrest of the intention to confiscate and revoke, in contrast to the notice provided to motorists in situations controlled by [§§ 60-498.01(2) and] 60-498.01(3). . . .
[S]ound policy reasons exist for requiring the time provision of § 60 498.01(5)(a) to be mandatory.
16 Neb.App. at 50, 741 N.W.2d at 686.
The reasons for requiring the 10-day time provision in § 60-498.01(5)(a) to be mandatory include both the statutory language of § 60-498.01(5)(a), precluding the Department from acting if the sworn report is not timely received, and the need for prompt notice of license revocation proceedings. Under § 60-498.01(5)(a), an arresting officer must submit a sworn report to the Department within 10 days of receiving the chemical test results, not only *474 to ensure "the swift and certain revocation of the operator's license of any person who has shown himself or herself to be a health and safety hazard," as § 60-498.01(1) generally suggests, but also to promptly notify a driver that he or she is subject to such revocation proceedings.
We hold that the 10-day time period for submitting a sworn report under § 60-498.01(5)(a) is mandatory and that if the sworn report is submitted after the 10-day period, the Department lacks jurisdiction to revoke a person's driver's license.
In the present case, Stoetzel submitted to a blood test, but the results of the test were not available while he was still in custody. He did not receive immediate notification that he was subject to license revocation proceedings. The record reflects that on March 7, 2006, the Department sent a letter notifying Stoetzel of the pending revocation proceedings. As discussed in the previous section, the Department received a report from the arresting officer on March 6, but this report was not properly completed and was not sufficient to confer authority on the Department to institute revocation proceedings, because the officer neglected to include the date he obtained the blood test results and § 60-498.01(5)(a) requires such date on a properly completed sworn report. The Department did not receive a report which included the date the officer received the blood test results until March 17.
Accordingly, when the Department sent the notification letter to Stoetzel on March 7, 2006, it was only in receipt of the improperly completed March 6 report, and thus, it did not have the authority to begin license revocation proceedings pursuant to § 60-498.01(5)(a), which implicitly requires the Department to be in receipt of a properly completed sworn report before it can proceed. The statute does not provide an exception to this rule when the arrested person receives actual notice of revocation proceedings within 10 days after the arresting officer obtained the results of the blood test. Because the Department lacked the authority to begin the proceedings, the March 7 letter to Stoetzel was ineffectual and is of no consequence to our discussion of whether or not the Department had jurisdiction to institute revocation proceedings.
Furthermore, the Department never acquired the authority to revoke Stoetzel's driver's license, because it never received a properly completed and timely submitted sworn report. The amended report submitted to the Department on March 17, 2006, was untimely and was not sworn. As a result of these findings, we conclude that the Department lacked jurisdiction to institute license revocation proceedings against Stoetzel, and we find this assignment of error to be without merit.

V. CONCLUSION
We find that a properly completed sworn report was not timely submitted to the Department, because the original sworn report failed to include the date the arresting officer received the blood test results and because the amended sworn report was received more than 10 days after the receipt of the blood test results and was not properly sworn. We also find that under § 60-498.01(5)(a), an arresting officer must submit a sworn report within 10 days after receiving the blood test results to provide the Department with jurisdiction over revocation proceedings. As such, we find that the Department failed to obtain jurisdiction to revoke Stoetzel's driver's license. We affirm the decision of the district court to reverse the Department's revocation of Stoetzel's license.
AFFIRMED.