783 N.W.2d 424 (2010)
279 Neb. 947
William MURRAY, appellant,
v.
Beverly NETH, director, State of Nebraska Department of Motor Vehicles, and the Nebraska Department of Motor Vehicles, appellees.
No. S-08-806.
Supreme Court of Nebraska.
June 4, 2010.
*428 Bell Island, of Island, Huff & Nichols, P.C., L.L.O., Scottsbluff, for appellant.
Jon Bruning, Attorney General, Andee G. Penn, and Milissa Johnson-Wiles, Lincoln, for appellees.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
GERRARD, J.
William Murray was stopped and arrested for driving under the influence of alcohol (DUI). The arresting police officer completed a sworn report indicating the reasons for the initial traffic stop but not the facts supporting a DUI arrest. The Nebraska Department of Motor Vehicles (DMV) sent a copy of the report back to the officer, along with a form identifying the deficiency. The officer completed an addendum to the sworn report, and following an administrative revocation hearing, the director of the DMV revoked Murray's operator's license. The primary issues presented in this case are whether the DMV could use an addendum to the sworn report to obtain jurisdiction and whether Murray's due process rights were violated.

BACKGROUND
Scottsbluff police officer Jed Combs stopped a vehicle that had expired license plates and was being driven the wrong way on a public highway. Combs made contact with the driver, Murray, and smelled the odor of alcoholic beverages coming from him. Murray failed field sobriety tests and a breath test, and he was arrested for DUI. Combs completed a sworn report and provided Murray with a temporary operator's license. On the sworn report, the reason stated for the arrest was "report of vehicle driving wrong way on Hwy 26 was advised that vehicle in question [sic]. I observed the vehicle described and observed the expired plate."
*429 After the DMV received the sworn report, a member of the DMV's legal division sent a copy of the sworn report back to Combs, along with a form captioned "Addendum to Sworn Report." The form advised Combs that "the reasons for arrest on the sworn report sent to you with this addendum may not confer jurisdiction to revoke the arrested person's operators license because it does not explain how you determined the person you arrested was intoxicated." Combs completed the form and returned it to the DMV, sworn and notarized. On the completed form, Combs stated that the reasons for arrest were as follows:
Report of motor vehicle driving down the wrong lane of travel. Was also advised that vehicle had expired plates. I observed the vehicle matching that description traveling west on Hwy. 26. I conducted a stop on the vehicle and smelled the odor of an alcoholic beverage. Driver consented to [standard field sobriety tests] and showed impairment. William Murray consented to [preliminary breath test]. [Preliminary breath test] a failure.
Murray filed a petition for an administrative hearing. At the hearing, the sworn report and addendum were received into evidence. Following the hearing, the hearing officer recommended that Murray's driving privileges be suspended for the statutory period. The director adopted the recommended order of the hearing officer and revoked Murray's operator's license for 90 days.
Murray appealed to the district court, which affirmed the director's revocation of Murray's driving privileges. Murray appealed, and the Nebraska Court of Appeals also affirmed the revocation.[1] The court concluded that the report and addendum contained the required recitations and were sufficient to confer jurisdiction. And the court rejected Murray's argument that the DMV, in requesting the addendum, denied Murray due process because the DMV's actions were not fair and impartial. Murray petitioned for further review, and we granted his petition.

ASSIGNMENTS OF ERROR
In his petition for further review, Murray assigns that the Court of Appeals improperly determined that (1) the DMV could use an addendum to the sworn report in order to obtain jurisdiction and (2) Murray's due process rights were not violated when the DMV requested an addendum in order to obtain jurisdiction.

STANDARD OF REVIEW
Under the Administrative Procedure Act,[2] an appellate court may reverse, vacate, or modify a district court's judgment or final order for errors appearing on the record.[3] When reviewing an order of a district court under the Administrative Procedure Act for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[4]
Whether the sworn report of a law enforcement officer is sufficient to confer jurisdiction on the DMV is a question of law, and an appellate court reaches a conclusion *430 independent of that reached by the lower court.[5]

ANALYSIS

STATUTORY AUTHORITY
We first address Murray's argument that the Court of Appeals improperly determined that the DMV could use an addendum to the sworn report to obtain jurisdiction. Murray contends the use of the addendum is beyond the authority granted to the DMV. In order to evaluate this argument, it is necessary to review the process of administrative license revocation (ALR) and the function of the arresting officer's sworn report.
Neb.Rev.Stat. § 60-498.01(3) (Reissue 2004) provides, as relevant, that when a person arrested for driving while under the influence of alcohol submits to a chemical test of blood or breath that discloses an illegal presence of alcohol, the arresting officer shall within 10 days forward to the director a sworn report stating (a) that the person was arrested for DUI and the reasons for such arrest, (b) that the person was requested to submit to the required test, and (c) that the person submitted to a test, the type of test to which he or she submitted, and that such test revealed the presence of alcohol in a concentration over the legal limit. The arresting officer's sworn report triggers the ALR process by establishing a prima facie basis for revocation.[6] The sworn report of the arresting officer must, at a minimum, contain the information specified in the statute in order to confer jurisdiction.[7]
In this case, the State does not contend that standing alone, Combs' original sworn report was sufficient to confer jurisdiction on the DMV. And similarly, Murray does not argue that the sworn report and addendum, considered together, do not contain the required information. The parties dispute whether the DMV had the authority to request and consider the addendum.
As a general rule, administrative agencies have no general judicial powers, even though they may perform some quasi-judicial duties.[8] An administrative body has no power or authority other than that specifically conferred by statute or by construction necessary to accomplish the plain purpose of the act.[9] There is no statute expressly authorizing the DMV to request or rely upon an addendum to a sworn report. So, the question presented is whether the authority to use an addendum to remedy a defective sworn report is needed to accomplish the purpose of the act.
The purpose of an ALR is to protect the public from the health and safety hazards of drunk driving by quickly getting DUI offenders off the road.[10] At the same time, the ALR statutes also further a purpose of deterring other Nebraskans from driving drunk.[11] The intent behind the revocation process is clear:
Because persons who drive while under the influence of alcohol present a hazard *431 to the health and safety of all persons using the highways, a procedure is needed for the swift and certain revocation of the operator's license of any person who has shown himself or herself to be a health and safety hazard ....[12]
Here, the DMV's procedures governing the revocation of an operator's license when an individual has been driving a vehicle under the influence of alcohol are in furtherance of this statutory purpose. We conclude that the authority to obtain and consider an addendum to a sworn report is also necessary to further the statutory purpose. The DMV has the power to establish an administrative process to revoke licenses, and that power necessarily encompasses the power to initiate proceedings and evaluate jurisdiction.
The DMV is charged with administering the ALR process as a whole: investigating the initial charge and initiating the proceedings, providing the driver with notice and a hearing on the merits of the charge, and ultimately determining whether the charge is valid and the operator's license should be revoked. The Legislature has specifically assigned those responsibilities to the DMV, not to law enforcement. It would be inconsistent with the DMV's investigatory responsibility if its jurisdiction to proceed with an ALR was left at the mercy of the arresting officer. Instead, when presented with a jurisdictionally deficient sworn report, the DMV's investigatory and administrative power necessarily extends to determining whether the deficiency is due to an actual lack of jurisdiction or is merely an inadvertent omission by the arresting officer. The DMV's authority to administer the ALR process would be incomplete if the DMV was unable to establish its jurisdiction to proceed with an ALR by remedying an inadvertent omission.
In short, the DMV has the power, in an ALR proceeding, to evaluate the jurisdictional averments in a sworn report and, if necessary, solicit a sworn addendum to that report if necessary to establish jurisdiction to proceed. The procedure followed by the DMV in this case, in returning the original sworn report to Combs and asking him to include any omitted information, was proper and necessary to accomplish the plain purpose of the ALR statute.
And contrary to Murray's assertion, the use of an addendum in this case is not an improper attempt to supplement evidence. As the Court of Appeals noted, this is not a situation where the DMV attempted to supplement a sworn report by offering the missing information through testimony from the arresting officer at the revocation hearing.[13] Here, the sworn report and addendum were sent to the DMV, and notice provided to Murray, prior to the revocation hearing, in an attempt to remedy a jurisdictional deficiency. The original sworn report and addendum, when considered together, contained the required recitations and were thus sufficient to confer jurisdiction on the DMV.
Given that the Legislature has found that "swift and certain revocation" of an operator's license is necessary when an individual drives while under the influence, we cannot conclude that the DMV's use of an addendum to cure a jurisdictional defect was improper. Forcing the DMV to take no action in remedying a defective sworn report would seriously undermine the Legislature's goal of protecting the public from the health and safety hazards *432 of drunk driving. We conclude that the DMV is authorized to employ such a procedure, and we find no merit to Murray's argument.

DUE PROCESS
Murray next argues that his due process rights were violated because the DMV "pre-adjudicated" his case.[14] Murray asserts that the actions of the DMV, in sending an addendum for Combs to complete and explaining why the information found in the original sworn report might not be sufficient to confer jurisdiction, were not the actions of a fair and impartial decisionmaker.
Procedural due process limits the ability of the government to deprive people of interests which constitute "liberty" or "property" interests within the meaning of the Due Process Clause and requires that parties deprived of such interests be provided adequate notice and an opportunity to be heard.[15] Suspension of issued motor vehicle operators' licenses involves state action that adjudicates important property interests of the licensees.[16] Thus, the property interest involved here is Murray's interest in retaining his driving privileges.
Before a state may deprive a motorist of his or her driver's license, that state must provide a forum for the determination of the question and a meaningful hearing appropriate to the nature of the case.[17] In proceedings before an administrative agency or tribunal, procedural due process requires notice, identification of the accuser, factual basis for the accusation, reasonable time and opportunity to present evidence concerning the accusation, and a hearing before an impartial adjudicator.[18] In the present case, Murray was provided ample notice of the charges and was afforded sufficient opportunity to rebut the charges when he exercised his right to a hearing with counsel present. Additionally, his counsel, on voir dire, cross-examined the arresting officer and had an opportunity to present evidence in front of a hearing officer where a record was made of the proceedings. Our analysis, therefore, turns on whether the decision to revoke Murray's license was made by an impartial decisionmaker.
In formal agency adjudications, as in court proceedings, due process requires a neutral, or unbiased, adjudicatory decisionmaker.[19] Administrative adjudicators serve with a presumption of honesty and integrity.[20] Factors that may indicate partiality or bias on the part of an adjudicator are a pecuniary interest in the outcome of the proceedings, a familial or adversarial relationship with one of the parties, and a failure by the adjudicator to disclose the suspect relationship.[21]
In this case, Murray does not argue that the hearing officer or director had any sort of pecuniary interest in the outcome of the proceeding or any familial or adversarial relationship with one of the parties that either official failed to disclose. Instead, *433 Murray contends that the DMV improperly prejudged his case when it reviewed the sworn report and solicited the addendum. These actions, Murray asserts, were not impartial.
But, as discussed above, it is important to distinguish between the investigatory and adjudicative functions of an administrative agency. As the U.S. Supreme Court has explained, while actual bias on the part of a judge or decisionmaker is not constitutionally tolerable,
[t]he contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication has a much more difficult burden of persuasion to carry. It must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.[22]
The Court acknowledged that the question whether those who have investigated should adjudicate was "substantial."[23] But, the Court noted, courts have generally rejected the idea that the combination of judging and investigating functions is a denial of due process.[24] And without a showing to the contrary, state administrators are assumed to be persons of conscience, capable of judging a particular controversy fairly on the basis of its own circumstances.[25]
The Court reasoned that judges, for example, repeatedly issue arrest warrants and rule at preliminary hearings based upon whether there is probable cause for an arrest or to hold a defendant for trial. Yet neither of these pretrial decisions has been thought to present a constitutional barrier to the same judge presiding over trial or, in the case of a bench trial, determining the guilt of the defendant.[26] Nor does making an initial assessment of the facts in the context of a preliminary injunction disqualify a judge from presiding over the rest of the litigation.[27] Likewise, the Court explained:
It is also very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings, and then to participate in the ensuing hearings. This mode of procedure does not violate the Administrative Procedure Act, and it does not violate due process of law....
....
The risk of bias or prejudgment in this sequence of functions has not been considered to be intolerably high or to raise a sufficiently great possibility that the adjudicators would be so psychologically wedded to their complaints that they would consciously or unconsciously avoid the appearance of having erred or changed position. Indeed, just as there is no logical inconsistency between a finding of probable cause and an acquittal in a criminal proceeding, there is *434 no incompatibility between the agency filing a complaint based on probable cause and a subsequent decision, when all the evidence is in, that there has been no violation of the statute.[28]
So, the Court concluded, "[t]he initial charge or determination of probable cause and the ultimate adjudication have different bases and purposes. The fact that the same agency makes them in tandem and that they relate to the same issues does not result in a procedural due process violation."[29]
So, while Murray may be correct in arguing that the DMV's original solicitation of the sworn report was not purely impartial, Murray is incorrect in assuming that this undermines the ultimate fairness of the adjudicative process. The DMV is required to initially investigate and evaluate the charge against a driver. This does not, without more, establish that the hearing officer and director of the DMV are not sufficiently fair and impartial, in making the ultimate adjudication of the charge, to provide the driver with due process of law.
The party seeking to disqualify an adjudicator on the basis of bias or prejudice bears the heavy burden of overcoming the presumption of impartiality.[30] Here, the record fails to show actual bias, actual partiality, animosity, or financial interest on the part of the hearing officer or director. The sworn report and addendum are essentially fill-in-the-blank documents provided by the DMV to arresting officers. As the Court of Appeals noted, there is no significant difference between the DMV's provision of the sworn report form and provision of the addendum form in the present case. Further, the evidence does not indicate that the DMV instructed the officer on how to fill out the form; rather, the DMV only pointed out what kind of information was missing. The DMV, in its investigatory capacity, was simply attempting to remedy a defective sworn statement in order to obtain jurisdiction to conduct the ALR hearing. On these facts, we find no violation of due process.
Briefly, we note Murray's claim that the DMV denied him due process by making ex parte contact with Combs.[31] Generally, no hearing officer or agency head or employee who is or may reasonably be expected to be involved in the decision-making process of a contested case shall make or knowingly cause to be made an ex parte communication to any party in a contested case or other person outside the agency having an interest in the contested case.[32] But Combs was a witness, not a party in the contested case or a person outside the agency having an interest in the contested case. And the "ex parte" contact between the DMV and Combs was, in actuality, no more substantial than the provision of the sworn report that the law requires in the first place. In short, the record fails to show that Murray's due process rights were violated by the DMV's correspondence with Combs.
Given the State's interest as articulated in our statutes in protecting the people of Nebraska from drunk drivers and the presumption of honesty and integrity that is afforded administrative decisionmakers, we conclude that a mere showing that the DMV sent an addendum form to the arresting officer before the hearing and revocation *435 is insufficient to disqualify the hearing officer or director as a matter of due process.[33] Under these facts, the Court of Appeals correctly concluded that Murray did not overcome the presumption of impartiality. Murray has failed to show he was deprived of due process, and his second assignment of error is without merit.

CONCLUSION
For the reasons discussed, we affirm the judgment of the Court of Appeals affirming the revocation of Murray's operator's license.
AFFIRMED.
MILLER-LERMAN, J., concurring in part, and in part dissenting.
I concur in part and dissent in part. I agree with the majority opinion that the Department of Motor Vehicles (DMV) has authority to solicit an addendum for certain limited purposes and that the analytical framework for evaluating the due process claim in this appeal is found in Withrow v. Larkin, 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). Unlike the majority, I would conclude that there was a due process violation, and I therefore respectfully dissent from that portion of the opinion that finds to the contrary.
Along with the majority, I recognize that the Court in Withrow stated that the combination of investigative and adjudicative functions in a single administrative entity does not necessarily create a due process violation. However, the Court in Withrow also stated that where certain "local realities" are present, a court may determine "from the special facts and circumstances present in the case before it that the risk of unfairness is intolerably high" and that the risk of bias may rise to an unconstitutional level. 421 U.S. at 58, 95 S.Ct. 1456. The Court further warned that "we should be alert to the possibilities of bias that may lurk in the way particular procedures actually work in practice." 421 U.S. at 54, 95 S.Ct. 1456. I believe that the record shows that the actual practice of using an addendum, solicited by the DMV at the director's behest, to shore up the factual content in the sworn report to be used as substantive evidence to establish a case decided by the director, raised the risk of bias to an unconstitutionally high level in this case and that Murray suffered a due process violation thereby.
The majority opinion states that the DMV used its investigatory capacity to remedy a sworn statement in order to obtain jurisdiction. This reference to "jurisdiction" reflects the language in the addendum in which the legal division of the DMV wrote a memorandum to the arresting officer soliciting further information because the "director has determined ... the sworn report ... may not confer jurisdiction." The request for further information reads in its entirety as follows:
The director has determined the reasons for arrest on the sworn report sent to you with this addendum may not confer jurisdiction to revoke the arrested person's operators license because it does not explain how you determined the person you arrested was intoxicated.
1. On the form before [sic], please indicate why you concluded the motorist was operating or in actual physical control of a motor vehicle while intoxicated.
2. After completing [the] form, please sign it in the presence of a notary and return it to the Director of the Department of Motor Vehicles by (a) *436 mailing it to [address provided] or (b) faxing it [to number provided].
Time is of the essence. Please return the form as soon as possible.
Thank you.
In my view, the DMV request taken in its entirety was not done to remedy an error. Compare Stoetzel v. Neth, 16 Neb. App. 348, 744 N.W.2d 465 (2008) (where undisputed missing date was added on sworn report by addendum at director's request, court concluded that there was no jurisdiction based on other grounds). Because the instant request was not a mere request to remedy a technical or objective defect to confer jurisdiction, but was in actual practice a request by the director for substantive information so that the DMV could establish its prima facie case to be decided by the director, I believe "the way [this] particular procedure ... actually work[s] in practice," see Withrow, 421 U.S. at 54, 95 S.Ct. 1456, demonstrates an intolerable risk of bias from a constitutional standpoint.
In numerous cases not repeated here, we have recognized that, given Nebraska's particular statutory structure found at Neb.Rev.Stat. § 60-498.01(3) (Reissue 2004), the timely and proper sworn report confers jurisdiction upon the director to revoke a motorist's license. See, e.g., Hahn v. Neth, 270 Neb. 164, 699 N.W.2d 32 (2005). Although the numerous statutory deficiencies in sworn reports have sometimes been collectively referred to as "jurisdictional" defects in our jurisprudence, we have in fact differentiated between the technical formalities of obtaining jurisdiction and the informational content in the sworn report. See id. This distinction becomes critical in a due process constitutional analysis. Further, we have long noted that the offer by the DMV of a sworn report establishes the DMV's prima facie case, Arndt v. Department of Motor Vehicles, 270 Neb. 172, 699 N.W.2d 39 (2005), and that the DMV is not required to prove the factual accuracy of recitations in a sworn report which show the prima facie case. Nothnagel v. Neth, 276 Neb. 95, 752 N.W.2d 149 (2008). Indeed, because a sworn report, which does not include the information required by statute, may not be supplemented by evidence offered at a subsequent hearing, see Hahn v. Neth, supra, the content of the sworn report is crucial to the prosecution of the case, and it is not surprising that the DMV would want the arresting officer to bolster the informational content of the sworn report.
We have noted that because a proper sworn report establishes the prima facie case, the Legislature has conferred a significant procedural benefit on the DMV. Id. We have stated that given "the substantial role which the sworn report plays in an administrative license revocation proceeding... the report must, at a minimum, contain the information specified in the applicable statute" and that the "statutory requirements are not onerous." Id. at 171, 699 N.W.2d at 38. In another case involving a sworn report, the concurring justice stated: "The requirements [for a proper sworn report] are not an onerous burden, given the benefit the DMV receives in establishing its prima facie case by simply complying with this requirement. In golf parlance, the sworn report is a `gimme.'" Johnson v. Neth, 276 Neb. 886, 896, 758 N.W.2d 395, 402 (2008) (Connolly, J., concurring). I agree with the foregoing, and I tend to disagree with the inference in the majority opinion that an arresting officer cannot be expected to adequately fill in the blanks on the sworn report.
For due process purposes, we have been advised to remain alert to "the way particular procedures actually work in practice." *437 Withrow v. Larkin, 421 U.S. 35, 54, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). Notwithstanding the presumption of honesty and integrity accorded administrative adjudicators, in my view, the statutory context plus the actual practice revealed in the instant case make the risk of unfairness and thus bias intolerably high.
The administrative case law distinguishes between combining investigative and adjudicative functions on the one hand and combining prosecutorial and adjudicative functions on the other. See, e.g., Botsko v. Davenport Civil Rights Com'n, 774 N.W.2d 841 (Iowa 2009); Nightlife Partners v. City of Beverly Hills, 108 Cal. App.4th 81, 133 Cal.Rptr.2d 234 (2003). Combining prosecutorial and adjudicative functions presents the greater danger to due process. Botsko v. Davenport Civil Rights Com'n, supra. When advocacy and decisionmaking roles are combined, "true objectivity, a constitutionally necessary characteristic of an adjudicator," is compromised. Howitt v. Superior Court, 3 Cal.App.4th 1575, 1585, 5 Cal.Rptr.2d 196, 202 (1992). It has sometimes been concluded that the prosecutorial and adjudicative combination poses so great a risk that due process has been violated without a showing of actual prejudice. See, e.g., Gonzales v. McEuen, 435 F.Supp. 460 (C.D.Cal.1977).
For purposes of discussion, I accept the majority's characterization of the instant case as one involving a combination of investigative and adjudicative functions. However, the actual facts bear some of the dangers which occur when prosecutorial and adjudicative functions are combined and about which Withrow warns. In the matter before us, the director, through her staff, directed the arresting officer to add information to the sworn report which was thereafter to be submitted to the director as adjudicator and which, under Nebraska law, would unfailingly serve to establish the prima facie case against Murray. The role of the director in this case is not neutral. The director works up the evidence which by operation of law is then deemed sufficient. Even if the driver challenges the sworn report, as Murray did, thus necessitating a hearing, it is difficult for the director to objectively reject the informational content contained in the sworn report which she developed. It has been observed that "[i]t is difficult for anyone who has worked long and hard to prove a proposition ... to make the kind of dramatic change in psychological perspective necessary to assess that proposition objectively ...." 2 Richard J. Pierce, Jr., Administrative Law Treatise § 9.9 at 681 (4th ed. 2002).
In the present case, I cannot say that the filing of the sworn report bearing the informational content developed by the director is merely investigative or ministerial. Compare Finer Foods Sales Co., Inc. v. Block, 708 F.2d 774 (D.C.Cir.1983). Instead, I believe that the risk of bias and unfairness was intolerably high and that there was a violation of due process in this case. I would reverse the decision of the Court of Appeals.
CONNOLLY, J., joins in this concurrence and dissent.
NOTES
[1] Murray v. Neth, 17 Neb.App. 900, 773 N.W.2d 394 (2009).
[2] Neb.Rev.Stat. §§ 84-901 to 84-920 (Reissue 2008 & Supp. 2009).
[3] Berrington Corp. v. State, 277 Neb. 765, 765 N.W.2d 448 (2009).
[4] Id.
[5] Johnson v. Neth, 276 Neb. 886, 758 N.W.2d 395 (2008).
[6] See Hahn v. Neth, 270 Neb. 164, 699 N.W.2d 32 (2005).
[7] Johnson, supra note 5.
[8] Hahn, supra note 6. See, Slansky v. Nebraska State Patrol, 268 Neb. 360, 685 N.W.2d 335 (2004); Ventura v. State, 246 Neb. 116, 517 N.W.2d 368 (1994).
[9] Hahn, supra note 6.
[10] Betterman v. Department of Motor Vehicles, 273 Neb. 178, 728 N.W.2d 570 (2007).
[11] Id.
[12] § 60-498.01(1).
[13] See Yenney v. Nebraska Dept. of Motor Vehicles, 15 Neb.App. 446, 729 N.W.2d 95 (2007).
[14] Brief for appellant in support of petition for further review at 4.
[15] Stenger v. Department of Motor Vehicles, 274 Neb. 819, 743 N.W.2d 758 (2008). See, also, Kenley v. Neth, 271 Neb. 402, 712 N.W.2d 251 (2006), modified on denial of rehearing 271 Neb. 683, 716 N.W.2d 44.
[16] Stenger, supra note 15.
[17] Id.
[18] See id.
[19] Barnett v. City of Scottsbluff, 268 Neb. 555, 684 N.W.2d 553 (2004).
[20] Id.
[21] See id.
[22] Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975).
[23] Id., 421 U.S. at 51, 95 S.Ct. 1456.
[24] Withrow, supra note 22.
[25] See id.
[26] See id.
[27] See id.
[28] Id., 421 U.S. at 56-57, 95 S.Ct. 1456.
[29] Id., 421 U.S. at 58, 95 S.Ct. 1456.
[30] Barnett, supra note 19.
[31] But see Walz v. Neth, 17 Neb.App. 891, 773 N.W.2d 387 (2009).
[32] § 84-914(6)(b).
[33] See id.