IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

FORBES V. LANG

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

SHAUNA FORBES, APPELLEE,
V.
CATHERINE D. LANG, COMMISSIONER OF LABOR, APPELLANT.

Filed May 14, 2013.    No. A-12-847.

Appeal from the District Court for Hall County: WILLIAM T. WRIGHT, Judge. Affirmed.

John H. Albin, Thomas A. Ukinski, and Caleb Dutson, Senior Certified Law Student, for appellant.

L. William Kelly for appellee.

SIEVERS, PIRTLE, and RIEDMANN, Judges.

PIRTLE, Judge.

## INTRODUCTION

Catherine D. Lang, Nebraska's Commissioner of Labor (Commissioner), appeals from an order of the district court for Hall County which affirmed a decision of the Nebraska Appeal Tribunal (Appeal Tribunal). The district court found that the Appeal Tribunal properly reduced the amount of unemployment insurance benefits that the Nebraska Department of Labor (Department) determined Shauna Forbes had been overpaid and was liable to repay. Finding no error on the record, we affirm the decision of the district court.

## BACKGROUND

Forbes was receiving unemployment insurance benefits. The Department conducted an audit of Forbes' wages between August 15, 2009, and January 30, 2010, to determine whether she had reported all her earnings during that timeframe and, thus, received appropriate unemployment insurance benefits.

- 1 -

Nebraska's Employment Security Law provides that any individual who willfully fails to disclose amounts earned during any week with respect to which benefits are claimed or who willfully fails to disclose or has falsified as to any fact which would have disqualified the claimant or rendered the claimant ineligible for benefits during such week, shall forfeit all or part of the claimant's benefit rights. Neb. Rev. Stat. § 48-663.01 (Reissue 2010). A claimant who has received benefits to which he or she is not entitled under the law shall be liable to repay those benefits. Neb. Rev. Stat. § 48-665 (Reissue 2010). The "Handbook for Claimants," given to individuals claiming unemployment insurance benefits, explains that the claimant is required to keep accurate records of all earnings, including tips, and to accurately report earnings and that any overpayments must be repaid.

In conducting the audit, the Department sought information from Forbes' employers during the period at issue, which included "Bandits," a restaurant where Forbes worked as a waitress, and the Department itself, where Forbes worked for 2 weeks in January 2011. Based on the information provided by the employers, the Department determined that Forbes had not accurately reported the earnings she had received from Bandits and had also failed to report earnings from her employment with the Department.

On September 7, 2010, the Department advised Forbes of a potential overpayment of unemployment insurance benefits between August 15, 2009, and January 30, 2010. On September 20, the Department sent Forbes a "Notice of Adjudicator's Determination," informing her that the Department had determined she had failed to correctly report her earnings for the time period in question, which resulted in an overpayment of unemployment benefits in the amount of $1,308, and that Forbes was obligated to repay such overpayment. The determination of this overpayment was based entirely on records received from Forbes' employers, Bandits and the Department.

On October 8, 2010, Forbes sent a letter to the Department challenging the potential overpayment. She included a handwritten account of the days and hours she worked between the dates in question. She also submitted photocopies of paystubs from Bandits that included handwritten notations she made showing corrections of the wages reported by her employer.

On October 13, 2010, Forbes filed a notice of appeal with the Appeal Tribunal appealing the Department's overpayment of benefits determination and asking for a hearing on the matter.

A hearing was held on January 27, 2011, before the Appeal Tribunal. The Department auditor who made the overpayment of benefits determination testified on behalf of the Department. He testified that in performing the audit of Forbes' benefits, the Department contacted the managers of Bandits seeking information about Forbes' hours and wages. The auditing process was delayed because Bandits and its accounting firm failed to provide the Department with the information it requested and in the format it needed. This necessitated correspondence back and forth between the Department and Bandits, until the Department received the earnings information it requested.

In June 2010, Bandits' accounting firm provided the Department with all the information it requested in regard to Forbes' employment. This information was entered into evidence at the hearing. The auditor testified that he also received documentation in regard to Forbes' earnings from the Department. The auditor stated that the overpayment determination in the amount of

$1,308 was based entirely on the information he received from Bandits and the Department. No one from Bandits participated in the hearing.

Forbes testified that while working at Bandits, she was paid a wage of $3.50 per hour, plus tips, and she was told to report her tips at the rate of $3.75 per hour, for a total of $7.25 per hour. She testified that she was told that she had to report $3.75 an hour in tips, even if she did not make that amount in tips. She admitted that her actual tips varied each day and that she did not keep track of the exact amount of tips she brought home after each shift and did not report the actual amount of tips that she received to the Department.

Forbes further testified that before she started filing for unemployment benefits, she asked the manager at Bandits how she should determine the income to report to the Department each week. She testified she was told that she should report her earnings by multiplying the hours she worked by $7.25, which would be in accordance with what was reflected on her paychecks. She testified that she relied on what the Bandits' manager told her in reporting her income to the Department each week for unemployment insurance benefits.

Forbes maintained that she kept accurate records of the hours she worked. She presented her own handwritten records of the dates and hours she worked each week at Bandits. She also submitted copies of paystubs from Bandits which included her handwritten notations showing corrections of the wages reported by Bandits. The copies of paystubs show that Bandits paid her an hourly rate of $3.50 and reported her tips at a rate of $3.75 per hour, just as Forbes testified. The figures provided by Bandits' accountant also calculated Forbes' wages at $7.25 per hour. Thus, both Forbes and Bandits calculated Forbes' pay by multiplying a total of $7.25 by the number of hours Forbes worked.

Forbes testified that when she compared the daily breakdown of the hours reported by Bandits' accountant with her own records, there were discrepancies between the two. She discovered that the accountant had down hours that were not correct or had hours down for days she did not work. She counted 9 different days the accountant reported she had worked that she did not actually work. Forbes testified that the day before the hearing, she spoke with her supervisor at Bandits, who apparently was the person who had kept or prepared the source records eventually given to the accountant, and that he could not explain the difference in hours on the accountant's records, but he was aware that sometimes hours were recorded on the wrong day. Forbes did admit to some errors in her own records as well.

Forbes admitted at the hearing that she had failed to report earnings for the weeks ending January 23 and January 30, 2010, from the Department and accepted liability for repayment of benefits received during those weeks, totaling $461. However, she denied that she had been overpaid benefits for any other weeks.

Following the hearing, the Appeal Tribunal entered its decision. It accepted Forbes' testimony and evidence concerning the hours she worked over the evidence presented by the Department:

> [Forbes] kept track of the hours she had worked each week and submitted her records as an exhibit at this hearing. See Exhibit 10. [Forbes] testified in person, under oath and subject to cross-examination that her records of the hours she worked each week were accurate. The Department . . . presented hearsay information received from the employer concerning [Forbes'] earnings for each week. See Exhibit 4. [Forbes] also

presented hearsay testimony that she had confronted the employer concerning the information it had provided to the Department . . . and that the employer conceded that its records concerning the number of hours she had worked was in some cases incorrect.

The [Appeal] Tribunal gives more weight to direct testimony given under oath and subject to cross-examination than may be accorded hearsay. Consequently, the [Appeal] Tribunal accepts [Forbes'] testimony concerning the hours she worked and finds that [Forbes] accurately reported earnings for all of the weeks in question except the weeks ending January 23, 2010 and January 30, 2010.

The Appeal Tribunal reduced the amount Forbes was obligated to repay from $1,308 to $461, the amount Forbes admitted she had been overpaid.

Following the Appeal Tribunal's decision, the Commissioner filed a request to reconsider, which the Appeal Tribunal denied. The Commissioner then filed a petition for review in the district court for Hall County. The district court affirmed the Appeal Tribunal's decision.

## ASSIGNMENTS OF ERROR

The Commissioner assigns, restated, that the district court erred in (1) failing to conduct a proper de novo review of the record of the Appeal Tribunal and (2) affirming the Appeal Tribunal's decision to reduce the amount of overpayment set forth in the Department's initial adjudication.

## STANDARD OF REVIEW

Under the Administrative Procedure Act (APA), Neb. Rev. Stat. §§ 84-901 to 84-920 (Reissue 2008 & Cum. Supp. 2012), an appellate court may reverse, vacate, or modify a district court's judgment or final order for errors appearing on the record. See *Murray v. Neth*, 279 Neb. 947, 783 N.W.2d 424 (2010). When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*.

Whether a decision conforms to law is by definition a question of law, in connection with which an appellate court reaches a conclusion independent of that reached by the lower court. *Nothnagel v. Neth*, 276 Neb. 95, 752 N.W.2d 149 (2008).

## ANALYSIS

The Commissioner argues that the district court failed to conduct a proper de novo review of the record in making a decision in this case, as required by § 84-917(5)(a).

It is evident in the district court's order that the court recognized that its review of the Appeal Tribunal's decision was de novo on the record. The district court's order specifically states that "[a] review under the APA filed in the District Court is conducted by the Court without a jury *de novo* on the record of the agency," citing § 84-917(5)(a). The district court further noted that "[i]n a *de novo* review of the record, the reviewing Court retries issues of fact, when the facts involved in the findings are challenged, and reaches an independent conclusion regarding such issues of fact," citing *Stackley v. State*, 222 Neb. 767, 386 N.W.2d 884 (1986). The district court went on to state that in a true de novo review, the district court's decision is to be made independently of the agency's prior disposition and the court is not required to give

deference to the findings of fact and the decision of the agency hearing officer or administrative law judge, citing *Langvardt v. Horton*, 254 Neb. 878, 581 N.W.2d 60 (1998).

The district court further recognized that where the evidence is in conflict, the district court, in applying a de novo standard of review, can consider and may give weight to the fact that the agency hearing examiner observed the witnesses and accepted one version of the facts rather than the other. *Law Offices of Ronald J. Palagi v. Dolan*, 251 Neb. 457, 558 N.W.2d 303 (1997).

Despite the district court's setting forth the correct standard of review in its order, the Commissioner argues that the district court did not apply a de novo review in making its decision because if it had, it would not have affirmed the Appeal Tribunal's decision. The Commissioner argues that the evidence presented by the Department at the hearing which came from Bandits, the employer, was the most reliable evidence of the hours Forbes worked and her earnings and that it is unreasonable to find that Forbes' records were more credible than those offered by the Department.

Based on the district court's order, it is clear that not only did the court recognize that its review was de novo on the record, but it also properly applied a de novo review in making its decision. The district court's order sets forth in part as follows:

> The primary dispute in this case is essentially a result of discrepancies between records provided to the agency by . . . Forbes' employer, "Bandits", a bar and grill, and records kept by . . . Forbes with regard to dates and hours of her work.
>
> . . . .
>
> . . . There is no indication . . . how any of the information provided [by Bandits' accountant] for the "audit" was originally recorded or retrieved. The inference is clearly possible that much of the information completed on the audit was the result of a hurried effort at attempting to reconstruct the employer's records and provide an "audit" which would satisfy the Department's demands. The records submitted by the employer, in this Court's estimation, do create an issue of credibility. There was no representative present at the appeal of the adjudication before [the Appeal Tribunal], and [the Appeal Tribunal] was entitled to, and apparently did give weight to the fact that he was able to observe . . . Forbes, was unable to observe anyone representing the employer, and largely accepted . . . Forbes' records and her version of the facts rather than what her employer, "Bandits" had submitted.
>
> . . . .
>
> On *de novo* [review] by this Court of all the evidence, and taking into consideration that [the judge] gave weight to the fact that he was able to observe . . . Forbes but not the employer, and in the absence of some foundation for the source documents apparently used to prepare the audits submitted by "Bandits" accountant, the Court must find that the determination of the Appeal Tribunal reducing the amount of overpayment set forth in the Department's initial adjudication from $1,308.00 to $461.00 should be and the same hereby is affirmed.

The district court considered and weighed the evidence presented by the Department and by Forbes and found Forbes' evidence more credible. It also gave weight to the fact that the

Appeal Tribunal observed the witnesses and accepted one version of the facts rather than another, as it was entitled to do. See *Law Offices of Ronald J. Palagi v. Dolan*, 251 Neb. 457, 558 N.W.2d 303 (1997).

Our review of a district court's judgment or final order under the APA is for errors appearing on the record. See *Murray v. Neth*, 279 Neb. 947, 783 N.W.2d 424 (2010). When reviewing an order of a district court under the APA for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable. *Id*. We find no errors appearing on the record in the instant case.

## CONCLUSION

Having reviewed the district court's order for errors appearing on the record and finding none, we affirm the decision of the district court finding that the Appeal Tribunal properly reduced the amount of overpayment of unemployment insurance benefits Forbes was liable to repay from $1,308, set forth in the Department's initial adjudication, to $461.

AFFIRMED.