IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

LATENSER V. OMAHA ZONING BOARD OF APPEALS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DANIEL M. LATENSER, APPELLANT,

V.

OMAHA ZONING BOARD OF APPEALS AND CITY OF OMAHA, APPELLEES,
AND INTERCESSORS OF THE LAMB, INC., INTERVENOR-APPELLEE.

Filed May 30, 2017.    No. A-16-126.

Appeal from the District Court for Douglas County: THOMAS A. OTEPKA, Judge. Affirmed.

Daniel M. Latenser, pro se.

Alan M. Thelen, Deputy Omaha City Attorney, and Jennifer J. Taylor for appellees.

David C. Levy and Krista M. Eckhoff, of Baird Holm, L.L.P., for intervenor-appellee.

INBODY, RIEDMANN, and ARTERBURN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Daniel M. Latenser appeals pro se from the order of the Douglas County District Court, which affirmed the decision of the Omaha Zoning Board of Appeals (Zoning Board) denying Latenser's appeal. We find that the district court did not abuse its discretion or make an error of law. We therefore affirm.

## BACKGROUND

This case presents the most recent challenge that neighboring property owners have launched regarding the manner in which the Intercessors of the Lamb, Inc. (the Intercessors) use their property. The Intercessors are a religious group dedicated to the ministry of prayer. Latenser

- 1 -

is a neighboring property owner. In 2004, the Omaha City Council approved the Intercessors' request for a special use permit to allow religious assembly use on their 75-acre tract of land, referred to as a "campus," in the Ponca Hills area of Omaha, Nebraska. The Intercessors' plan indicated that 43 members were housed on the campus or in six adjacent houses. Their immediate goal was to build a 9,400 square-foot chapel, and their strategic plan called for the construction of 7 new resident houses and 18 individual occupancy cabins. Neighbors of the Intercessors were unhappy with the City Council's decision to grant the special use permit and appealed to the district court. The district court upheld the permit, and this court affirmed. See *Miles v. Omaha City Council*, No. A-05-1037 (Neb. App. Nov. 26, 2007) (not designated for permanent publication).

In 2007, the Intercessors purchased a plot of land abutting their property, which contained a building that had previously been used as a plastics plant. The Intercessors desired to transform the building into a retreat center and applied for a request for zoning and a major amendment to their existing special use permit. In 2008, the City Council approved the applications subject to certain conditions.

At various times during this period, Latenser contacted the City of Omaha planning department, lodging assorted complaints about the manner in which the Intercessors were using their property and what he believed were violations of the Omaha Municipal Code or the conditions of the special use permit. The planning department investigated the complaints, but found either no merit to Latenser's allegations or believed that the Intercessors were complying with the law and the terms of their special use permit. Dissatisfied with the planning department's lack of action, Latenser began requesting a hearing before the Zoning Board in early 2008. In his communications to the Zoning Board, he summarized numerous issues upon which he wanted the Zoning Board's opinion, and the Zoning Board administrator and/or the assistant planning director repeatedly expressed confusion as to the decision from which Latenser was appealing and the specific action he was requesting the Zoning Board to take.

A hearing was ultimately held in June 2009, at which time the Zoning Board voted to deny Latenser's appeal. Latenser appealed that decision to the Douglas County District Court, and the district court remanded the matter to the Zoning Board to have an "appropriate hearing" to review Latenser's evidence and make a determination accordingly.

On remand, Latenser was afforded three hearings before the Zoning Board, held in July, September, and December of 2013. Again, the Zoning Board members repeatedly asked Latenser what specific action he wanted them to take, but his responses were vague, evolving, and unclear. He asserted numerous complaints against the Intercessors, but his chief complaint appeared to be that the Intercessors were allowing more than three unrelated people to reside in single family residences without a group residential permit. And by doing so, he argued, they were violating the municipal code and the conditions of their special use permit. Latenser also challenged the planning department's opinion that group residential use was allowed as incidental to the religious assembly use, particularly arguing that the planning department's decision to exclude "periodic visitors" from its count of residents was not permitted under the municipal code.

At the conclusion of the September 2013 hearing, the Zoning Board voted to request that the planning department investigate five specific concerns and report back at the next hearing. At the December hearing, a representative from the planning department informed the Zoning Board that he and other members of the planning department had investigated the Intercessors' property

and did not find any evidence that more than three unrelated people were living on campus, excluding periodic visitors, and they found that the Intercessors' use of the land was consistent with the municipal code.

The Intercessors' attorney argued to the Zoning Board that in order to determine whether periodic visitors and group assembly are permissible, it is important to remember that the property is viewed as a whole campus which was approved for religious assembly, and for the Intercessors' purpose, religious assembly includes more than showing up at a place of worship and leaving after a short period of time. Rather, for the Intercessors, religious assembly includes a religious education and retreat process. The City Council approved a permit for a retreat center, which was specially applied for and approved for purposes of housing periodic visitors on the campus for religious education purposes.

The planning department reiterated its position to the Zoning Board that the Intercessors' current use of their property is consistent with the municipal code. A planning department representative reminded the Zoning Board that "group residential" use no longer exists under the current municipal zoning codes and has been replaced with large group living/small group living designation. He disagreed with Latenser's interpretation of the municipal code and again opined that accessory dwelling units are permissible under the municipal code as part of a civic use, and religious assembly is a civic use. He stated that in discussing the Intercessors' initial application for the special use permit, the planning department and City Council had considered the entire 75-acre campus to allow for religious assembly, including people living on campus, and instead of "group residential" use as Latenser refers to the residences, they are permissible accessory dwelling units.

After considering Latenser's evidence and arguments, as well as information provided by the planning department, city supervisor, and the Intercessors' attorney, the Zoning Board unanimously voted to find that the Intercessors were in compliance with the zoning and building regulations and that the City of Omaha (the City) had properly enforced the requirements. As such, Latenser's appeal was denied.

Latenser appealed the Zoning Board's decision to the Douglas County District Court. The district court concluded that Latenser failed to meet his burden of showing that the Zoning Board's decision was illegal or not supported by the evidence, or arbitrary, unreasonable, or clearly wrong. It therefore affirmed the Zoning Board's decision. Latenser now appeals to this court.

## ASSIGNMENTS OF ERROR

Latenser's brief contains 26 assigned errors. Summarized and including only those errors that are properly before us and specifically assigned and specifically argued in his brief, he generally asserts that the district court erred in affirming the Zoning Board's decision to deny his appeal, the district court erred in using the City's brief nearly word for word as its order, and there were violations of his due process rights as part of the Zoning Board process.

## STANDARD OF REVIEW

On appeal, a district court may disturb the decision of a zoning appeals board only when the decision was illegal or is not supported by the evidence and is thus arbitrary, unreasonable, or clearly wrong. *Lamar Co. of Nebraska v. Omaha Zoning Bd. of Appeals*, 271 Neb. 473, 713

N.W.2d 406 (2006). In reviewing a decision of the district court regarding a zoning appeal, the standard of review is whether the district court abused its discretion or made an error of law. *Id*.

ANALYSIS

*Zoning Board's Jurisdiction.*

At the outset we address the City's jurisdictional argument. The City asserts that the Zoning Board lacked jurisdiction because the City Council has the exclusive authority to revoke special use permits if it determines that the property is being used in an impermissible manner. See Omaha Mun. Code, ch. 55, art. XX, § 55-884(n)(2) (city council may revoke special use permit if it determines use is violating this chapter or terms and conditions of special use permit). The City recognizes, however, that the Zoning Board is authorized to review decisions made by an administrative official, such as the planning director, but notes that it has never been clear what administrative decision Latenser appealed to the Zoning Board.

Under Omaha Mun. Code, ch. 55, art. III, § 55-42(a), the planning director has the authority to determine the appropriate use type of any existing or proposed use. Such determination may be appealed to the Zoning Board. *Id*. See also Omaha Mun. Code, ch. 55, art. XX, § 55-891(b)(2) (appeals from decision of planning director or designee regarding enforcement of this chapter shall be made to Zoning Board). Neb. Rev. Stat. § 14-409 (Reissue 2012) also authorizes the Zoning Board to hear and decide appeals from and review any order, requirement, decision, or determination made by an administrative official charged with the enforcement of any ordinance adopted pursuant to sections 14-401 to 14-418.

We agree with the City that it is difficult to discern a particular decision from which Latenser appealed or the action he requested that the Zoning Board take. At argument, Latenser stated he was appealing the 2008 special use permit and he wanted the Zoning Board to direct the planning commission to enforce the conditions of the special permit. As to his specific complaints, however, we liberally construe that he is appealing from the decision contained in a July 2008 letter from the assistant planning director sent in response to a June 2, letter from Latenser. In that June letter, Latenser requested the following actions:

> 1. Order enforcement of the November 2003 ZBA ruling returning homes in the [Development Reserve District] to Single Family Residential Usage.
>
> 2. Order enforcement of Omaha Municipal Code Section 55-763 c) [sic]: Limiting Group Residential usage in the [Development Reserve District].
>
> 3. Order return on the non-compliant properties holding tax-exempt status to single family residential based on the "prima facie" evidence of Tax Exemption.
>
> 4. Determine non-compliance status for the properties at 4110 N Post Road and 4014 N Post Road which are operating structures converted without permit for Religious Assembly and Group Residential.

In response, the assistant planning director provided the following feedback:

> 1. Complete
> 2. It is not the place of the Zoning Board of Appeals to make such an order.

3. The City has determined that these properties, although tax exempt, are being used in accordance with the standards and codes applicable to single family residences.

4. These properties are within the boundaries of the approved special use permit.

We caution, however, that the Zoning Board had the authority to review only those issues contained in the decision from which the appeal was taken. We therefore address only whether the district court properly affirmed the Zoning Board's ruling with respect to these issues, all of which involved Latenser's claim that the properties are improperly being used as "group residential" housing. While the record contains numerous subsequent requests from Latenser to the Zoning Board seeking specific action, the Zoning Board is a board of appeals that is authorized to review any order, requirement, decision, or determination made by an administrative official charged with the enforcement of any ordinance adopted pursuant to §§ 14-401 to 14-418. Without a specific order or determination from an administrative official from which Latenser sought review, we decline to address these subsequent requests.

*Sufficiency of Current Permits to House Residents.*

From our understanding, Latenser's chief complaint was that the Intercessors were allowing more than three unrelated people to reside in single family residences on their property without obtaining a permit for group residential or a permit for accessory apartments. A similar argument was raised and rejected by this court in the appeal taken from the approval of the special use permit in 2004. See *Miles v. City of Omaha*, A-05-1037 (Nov. 26, 2007).

In *Miles v. City of Omaha*, several neighbors, including Latenser's parents for whom he appeared through a power of attorney, argued on appeal that the special use permits should not have been granted, because the evidence showed that the Intercessors' use of the land should be classified as group residential use rather than religious assembly use. The neighbors asserted that the evidence did not support a finding that all of the residential buildings on the Intercessors' proposed plan were appropriate and incidental to the religious assembly use. The neighbors noted that the Zoning Board had denied the Intercessors' variance request in 2003, which would have allowed members of their community to live in existing group residential housing on the property.

This court recognized that religious assembly is a civic use type under the municipal code, and as such, a religious assembly use would allow certain "accessory uses," including those appropriate and incidental to the principal use. See Omaha Mun. Code, ch. 55, art. XV, § 55-769(b). Civic use types may include an accessory use for accessory dwellings. § 55-769(g)(2).

After reviewing the record, we concluded that the residences on the Intercessors' campus were accessory dwellings, because they were clearly incidental and related to the Intercessors' use of the chapel for religious activity. We determined that the incidental use of residences on the Intercessors' property serves as a means to facilitate their stated purpose of religious assembly. Accordingly, we rejected the neighbors' arguments that the Intercessors' use of the land should be classified as group residential use rather than religious assembly use. Accordingly, we affirmed the decision to grant the special use permits. As such, the doctrine of claim preclusion prohibits relitigating this issue in the present case.

Claim preclusion bars the relitigation of a claim or cause of action that has been directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered

by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions. *Hara v. Reichert*, 287 Neb. 577, 843 N.W.2d 812 (2014). The doctrine bars relitigation not only of those matters actually litigated, but also of those matters which might have been litigated in the prior action. *Id*. The doctrine rests on the necessity to terminate litigation and on the belief that a person should not be vexed twice for the same cause. *Id*.

Here, neighbors of the Intercessors, including Latenser's parents (the owners of the property through which Latenser now claims standing), appealed the approval of the 2004 special use permit and argued that the appropriate use of the property was group residential, not religious assembly. They argued that allowing numerous residents per household was not incidental to religious assembly use and violated municipal code. A hearing was held before the district court at which the neighbors and the City had the opportunity to offer evidence and argue their positions. The district court upheld the decision, and this court affirmed, ruling that the residential use was incidental to the religious assembly and therefore permissible. Because this issue has been litigated and ruled upon by a court of competent jurisdiction, with entry of a final judgment on the merits, if Latenser was in privity with any party in the prior action, he would be precluded from raising the issue in the present action.

In his "petition in error" Latenser states that he has been a resident of the neighboring property "since birth, and [his] family has owned the property for more than 90 years and five generations have lived continuously on the properties." He was named as a party in *Miles v. City of Omaha* as power of attorney for his parents. "Privity implies a relationship by succession or representation between the party to the second action and the party to the prior action in respect to the right adjudicated in the first action." *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 838, 458 N.W.2d 443, 457 (1990).

Because Latenser seeks resolution of this issue as a property owner based upon the same property upon which his parents sought resolution of the same issue in *Miles v. City of Omaha*, we determine that Latenser is in privity with them. Consequently, Latenser is precluded from raising the issue in the present action. As a result, we do not further opine on whether group residential use is permissible as incidental to religious assembly use under the Intercessors' special use permit, and the district court did not abuse its discretion in affirming the Zoning Board's decision to reject Latenser's arguments to the contrary.

Based on this finding, we need not address Latenser's argument that the Zoning Board incorrectly found that there were not more than three unrelated people living at the Intercessors' property or that periodic visitors are not restricted under the municipal code. Even if there are additional residents at the homes or periodic visitors are included in the resident count, group housing is a permissible use as incidental to religious assembly.

*Continued Validity of Special Use Permits.*

Latenser also claims that the district court erred in affirming the Zoning Board's decision that the Intercessors' special use permit remained valid and had not lapsed. Although not specifically raised in his June 2, 2008 letter, we recognize this issue because it is tangentially related to the special use permit which has been at issue. However, we conclude that the Zoning Board lacked jurisdiction over this issue.

- 6 -

Under the 2004 version of Omaha Mun. Code, ch. 55, art. XX, § 55-884(k)(1) which was in effect at the time the Intercessors' special use permit was initially approved, a special use permit shall become void two years after the date on which the permit became effective unless the applicant receives a building permit and diligently carries out construction before expiration of that period. Latenser argued to the Zoning Board that because the Intercessors had failed to secure building permits and diligently carry out construction, their special use permit lapsed in 2006. Thus, he asked that the Zoning Board "rule on whether or not that permit for special use religious assembly expired because they didn't file any building permit" and because the Intercessors never completed construction.

Under Nebraska's Uniform Declaratory Judgments Act, Neb. Rev. Stat. §§ 25-21,149 to 25-21,164 (Reissue 2016), any person whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder. See § 25-21,150. Here, Latenser is seeking to have the Intercessors' status under § 55-884(k)(1) determined by the Zoning Board. In other words, he is seeking a declaratory judgment from the Zoning Board.

A zoning board is an administrative body performing quasi-judicial functions. *Field Club Home Owners League v. Zoning Bd. of Appeals of Omaha*, 283 Neb. 847, 814 N.W.2d 102 (2012). As a general rule administrative agencies have no general judicial powers, notwithstanding they may perform some quasi-judicial duties. *Jaksha v. State*, 241 Neb. 106, 486 N.W.2d 858 (1992). The entry of declaratory judgments is a judicial function. See *id*. Accordingly, as an administrative body, the Zoning Board has no authority to issue a declaratory judgment. We therefore find no merit to Latenser's argument that the Zoning Board should have determined that the Intercessors' special use permit lapsed in 2006.

*Similarity Between District Court's Order and City's Brief.*

Latenser also argues that reversal is required because of similarities between the district court's order and the City's brief to the district court. He claims that the similarities combined with the fact that the court's order does not reference his brief or arguments demonstrates that no meaningful review or consideration was done by the court. We disagree.

We first note that in support of his argument, Latenser cites to the supplemental transcript, which contains documents not generally filed with the district court, including briefs and emails between the parties and district court judge. Latenser requested the inclusion of these documents in his original transcript, but they were not included because they were not part of the record. In an effort to have them transmitted to this court, Latenser filed the documents with the clerk of the district court five months after the district court entered its order. He then requested preparation of a supplemental transcript, including the newly filed documents.

Because those documents were not offered or received into evidence, however, we cannot consider them on appeal. A bill of exceptions is the only vehicle for bringing evidence before an appellate court; evidence which is not made a part of the bill of exceptions may not be considered. *In re Guardianship of Forster*, 22 Neb. App. 478, 856 N.W.2d 134 (2014). Appellate courts cannot rely upon information in the transcript to establish facts, even a stipulation of facts. *Id*.

Additionally, briefs are to be presented to the judge and not filed with the clerk. See Neb. Ct. R. § 6-1505. An appellate court cannot consider as evidence statements made by the parties at oral argument or in briefs, as these are matters outside the record. *Bedore v. Ranch Oil Co.*, 282 Neb. 553, 805 N.W.2d 68 (2011). Because the documents contained in the supplemental transcript are not properly before this court, we do not consider them in our review of Latenser's argument.

In general, Latenser cites no authority for his argument that similarities between a trial court's order and the brief of a party require reversal, and we have found none. The district court made clear at the hearing that it began to read Latenser's 72-page brief and would set aside time to finish reading it as well as the City's brief. Latenser was given the opportunity to offer evidence and argue his appeal. There is no support in the record for Latenser's argument that the court failed to consider the evidence or his arguments. We therefore find that Latenser has failed to establish that the district court's order constitutes an abuse of discretion.

*Due Process Claims.*

Finally, Latenser contends that his due process rights were violated because the planning board failed to forward his 2008 communications to the Zoning Board and ex parte communications occurred during the Zoning Board process. We find no merit to these arguments.

Due process principles protect individuals from arbitrary deprivation of life, liberty, or property without due process of law. *Bryan M. v. Anne B.*, 292 Neb. 725, 874 N.W.2d 824 (2016). As a general rule, where an administrative body acts in a quasi-judicial manner, due process requires notice and an opportunity for a full and fair hearing at some stage of the agency proceedings. *City of Lincoln v. Twin Platte Nat. Res. Dist.*, 250 Neb. 452, 551 N.W.2d 6 (1996). However, the demands of due process do not require a hearing at any particular point in an administrative proceeding so long as the requisite hearing is held before the final order becomes effective. *Id.*

Latenser admits that despite the planning department's failure to do so, he provided the 2008 documents to the Zoning Board, and they are contained in our record on appeal. The documents included Latenser's initial requests for a hearing before the Zoning Board, and the City's responses asking for clarification as to the decision from which Latenser was appealing and the remedy he was seeking from the Zoning Board. Ultimately, he received multiple hearings before the Zoning Board, and the Zoning Board reached a decision, which Latenser then appealed to the district court. Accordingly, we find that Latenser has failed to establish a violation of his due process rights.

Latenser also argues that impermissible ex parte communications occurred when the Zoning Board administrator, who also works for the City planning department, was present at a Zoning Board meeting prior to the December 2013 hearing on Latenser's appeal and when a Zoning Board member told him at the September 2013 hearing, "We drove this [area] quite a bit this morning. I'll be honest. We've been out. We've been up that road. . . . "

Generally, no hearing officer or agency head or employee who is or may reasonably be expected to be involved in the decision-making process of a contested case shall make or knowingly cause to be made an ex parte communication to any party in a contested case or other person outside the agency having an interest in the contested case. *Murray v. Neth*, 279 Neb. 947, 783 N.W.2d 424 (2010). With respect to the meeting prior to the December 2013 hearing, notice

was provided to Latenser, informing him that the Zoning Board would have a "pre-meeting" the morning of his hearing "to determine the sites to be inspected." The evidence indicates that members of the planning department were present at the pre-meeting with the Zoning Board, but there is no indication that anything substantive was discussed regarding the results of the planning department's investigation that the Zoning Board had ordered.

With respect to the board member's comments, there is no evidence as to who visited the Intercessors' property or that anything substantive was discussed. Indeed, in his brief, Latenser merely asserts that the Zoning Board "had visits to the campus and possible undisclosed conversations" per the board member. Brief for appellant at 50. The burden is on Latenser to prove a violation of his due process rights, and we find that he has failed to do so. We therefore find no abuse of discretion in the district court's order affirming the decision of the Zoning Board.

## CONCLUSION

For the foregoing reasons, we conclude that the district court did not abuse its discretion in affirming the decision of the Zoning Board, which denied Latenser's appeal. We therefore affirm.

AFFIRMED.